**AUSTIN, Banking Commissioner, et al. v. KISER. (No. 1796.)***

(Court of Civil Appeals of Texas. El Paso. Oct. 29, 1925. On Rehearing, Nov. 19, 1925.)

**1. Banks and banking ☞15—Commissions of tax collector deposited with public funds held not protected by state guaranty fund before approval of collector's reports.**

County tax collector, who deposited in county depository, to his credit as tax collector, all taxes collected by him, is not entitled, on insolvency of depository, to have his commissions, not withdrawn from such account, treated as noninterest bearing individual deposits, protected by the state guaranty fund, where, prior to such insolvency, his reports of collections had not been approved by the proper authorities, since under Vernon's Ann. Civ. St. Supp. 1918, arts. 2444, 7610b, 7618, and Vernon's Sayles' Ann. Civ. St. 1914, art. 7619, he is not authorized to pay such commissions until approval of such reports, and Rev. St. 1911, art. 486, as amended by Acts 38th Leg. (1923) c. 45, excludes from the Guaranty Law public funds.

**2. Banks and banking ☞15—Commissions of tax collector intermingled with "public funds" in depository hands not protected by state guaranty fund.**

A sheriff and ex officio county tax collector, who deposited in the county depository, to his credit as tax collector, all taxes collected by him, is not entitled, on the insolvency of the depository, to have any commissions, not withdrawn from such account, treated as noninterest bearing individual deposits, protected by the state guaranty fund, since such private funds were improperly commingled with public funds, and, though not protected by the depository bond, and properly interest bearing under contract of depository they were nevertheless subject to the payment of his liabilities to the state for taxes collected, and hence constituted a "public fund" within the meaning of Rev. St. 1911, art. 486, as amended by Acts 38th Leg. (1923) c. 45, not protected by the guaranty fund.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Funds.]

**3. Banks and banking ☞15—Guaranty fund protects only noninterest bearing unsecured deposits.**

The only obligation secured by depositors' guaranty fund, under Rev. St. 1911, art. 486, as amended by Acts 38th Leg. (1923) c. 45, is noninterest bearing and otherwise unsecured deposits.

**4. Depositaries ☞8—Private funds of tax collector, inadvertently commingled with public funds, may be returned by depository.**

When private funds of a tax collector, by inadvertence or otherwise, have been improperly commingled with tax collections deposited in depository, depository may lawfully return the same to the collector, in view of Vernon's Ann. Civ. St. Supp. 1918, art. 7610b.

On Rehearing.

**5. Banks and banking ☞15—Tax collector, whose funds were improperly commingled with public funds by error of bank, not precluded from claiming benefit of guaranty fund.**

On the insolvency of a county depository, a tax collector, whose private funds were improperly commingled with public funds through error or wrongful act on the part of the bank, for which he is not responsible, is not thereby deprived of the right to establish his claim against the depositors' guaranty fund as noninterest bearing unsecured deposits within Rev. St. 1911, art. 486, as amended by Acts 38th Leg. (1923) c. 45.

Walthall, J., dissenting.

Appeal from District Court, Reeves County; Chas. Gibbs, Judge.

Action by E. B. Kiser against Charles O. Austin, Banking Commissioner, and others. Judgment for the plaintiff, and the defendants appeal. Reversed and rendered.

Dan Moody, Atty. Gen., John W. Goodwin, Asst. Atty. Gen. and Solicitor of State Banking Department, and Geo. E. Christian, Asst. Atty. Gen., for appellants.

H. G. Russell and J. E. Starley, both of Pecos, for appellee.

HIGGINS, J. The Pecos Valley State Bank was incorporated under the banking laws of this state; its depositors being secured by the depositors' guaranty fund. In February, 1923, it was duly selected as the county depository of Reeves county and gave the bond required by law, which was approved. The bank became insolvent and was closed by the banking commissioner on January 28, 1924, since which date it has been in process of liquidation by that official. The appellee, Kiser, was sheriff and ex officio tax collector of said county during the years 1923 and 1924, and as such collector deposited to his credit in said bank, as tax collector, all taxes collected by him except the sum of $10,033.23 collected in the two or three days preceding the bank's failure.

This suit was brought by Kiser in his individual capacity against the bank, the banking commissioner, and the state banking board setting up that upon the date the bank closed he had on deposit with it the sum of $5,960.81, which deposit it was sought to have established as secured by the depositors' guaranty fund. Upon trial without a jury he recovered judgment as prayed for. Separate findings and conclusions were not filed by the trial court. The material facts are undisputed.

It is not affirmatively shown that the Pecos Valley State Bank was the duly selected county depository prior to February, 1923, but Kiser testified he had been collecting taxes since the latter part of 1918 and placing

all the money in that bank. At the time the bank closed he had two accounts therein, one in the name of E. B. Kiser, tax collector; and the other in the name of E. B. Kiser, state account. Upon the date the bank closed there was a balance of $35,300.93 to the credit of the first account and a balance of $3,529.13 to the credit of the other account. The total of these balances is $38,830.06. R. G. Middleton was appellee's deputy in charge of tax collections. He testified that as a rule he deposited the original tax collections in the name of E. B. Kiser, tax collector, and from time to time he would transfer from that account to the account of E. B. Kiser, state account, money which he had apportioned to the state, so that it would draw interest. The accounts mentioned were the only accounts maintained by Kiser, and it is shown that he deposited in the first-named account all other moneys belonging to him personally; in other words, he deposited to the credit of E. B. Kiser, tax collector, not only the taxes collected by him, but his personal funds accruing from other sources. It was shown that Kiser had accounted to the proper authorities for all tax collections, less his commissions, except $32,869.28. The way he undertook to show the amount due him personally was by deducting the last-mentioned sum from the balance in the depository at the time it was closed. That calculation left a balance of $5,960.78. He had no data by which he could otherwise determine how much of the balance in the depository belonged to him personally. Of the amount claimed by Kiser, $3,207.33 represents the commission upon tax collections allowed him by law. Of said $3,207.33 a portion thereof represents his commission upon January, 1924, tax collections.

[1] The majority are of the opinion that appellee is clearly not entitled to have his commission upon the January collections established as a deposit secured by the guaranty fund for the reason that at the time the bank failed such commissions were public funds, interest bearing, and secured by the depository bond. We think this conclusion necessarily follows upon a consideration of our statutory provisions.

Article 486, R. S. 1911, as amended by chapter 45, Acts 38th Legislature, Regular Session, provides:

"That no deposit upon which interest is being paid or contracted to be paid, either directly or indirectly by said bank, its officers or stockholders to the depositor and no deposit secured in any way shall be insured under this chapter. * * * No deposit of public funds of any kind or character, whether interest bearing or not, deposited in a state bank, shall be insured under this chapter, by the term 'public funds' as herein used, shall be meant, funds belonging to the state of Texas, to any county or political subdivision of the state, municipal corporation, road districts, school districts, drainage districts, levy districts or bonded district of any

kind. Provided, however, that the defining of public funds herein shall not be exclusive, and any funds coming fairly under the definition of said terms shall not be protected under this chapter."

Article 2444 (Vernon's Ann. Civ. St. Supp. 1918), relating to county depositories, provides:

That it shall "be the duty of the tax collector of such county to deposit all taxes collected by him, or under his authority, for the state and such county and its various districts and other municipal subdivisions, in such depository or depositories, as soon as collected, pending the preparation of his report of such collections and settlement thereon, which shall bear interest on daily balances at the same rate as such depository or depositories have undertaken to pay for the use of county funds, and the interest accruing thereon shall be apportioned by the tax collector to the various funds earning the same. The bond of such county depository or depositories shall stand as security for all such funds. If the tax collector of such county shall fail or refuse to deposit tax money collected as herein required, he shall be liable to such depository or depositories for ten per cent. upon the amount not so deposited and shall in addition be liable to the state and county and its various districts and other municipal subdivisions for all sums which would have been earned had this provision been complied with, which interest may be recovered in a suit by the state."

Article 7610b, relating to the collection of taxes, reads:

"Provided that except as to compensation due such tax collector as shown by his approved reports, tax money deposited in county depositories shall be paid by such depositories only to treasurers entitled to receive the same, on checks drawn by such tax collector, in favor of such treasurer."

Article 7618 provides:

"At the end of each month the collector of taxes shall, on forms to be furnished by the comptroller of public accounts, make an itemized report under oath to the comptroller, showing each and every item of ad valorem, poll and occupation taxes collected by him during said month, accompanied by a summarized statement showing full disposition of all state taxes collected. Provided, however, that said itemized reports for the months of December and January of each year may not be made for twenty-five (25) days after the end of such months if same cannot be completed by the end of such respective months.

"2. He shall present such report, together with the tax receipt stubs, to the county clerk, who shall, within two days, compare said report with said stubs, and if same agree in every particular as regards names, dates and amounts, he (the clerk) shall certify to its correctness. * * *

"3. The collector of taxes shall then immediately forward his reports so certified to the comptroller, and shall pay over to the state treasurer all moneys collected by him for the state during said month, excepting such

amounts as he is allowed by law to pay in his county, reserving only his commissions on the total amount collected." * * *

Article 7619 (Vernon's Sayles' Ann. Civ. St. 1914) provides:

"The collector of taxes shall at the end of each month make like reports to the commissioners' court of all the collections made for the county, conforming as far as applicable and in like manner to the requirements as to the collection and report of taxes collected for the state. The county clerk shall likewise, within two days after the presentation of said report by the collector, examine said report and stubs, and certify to their correctness as regards names, dates and amounts; for which examination and certificate he shall be paid by the collector of taxes fifty cents each month, which amount shall be allowed to the collector by the commissioners' court.

"2. The clerk shall file said report intended for the commissioners' court, together with the tax receipt stubs, in his office for the next regular meeting of the commissioners' court.

"3. The collector of taxes shall immediately pay over to the county treasurer all taxes collected for the county during said month, after reserving his commissions for collecting the same, and take receipts therefor, and file with the county clerk."

Under article 2444, it is the duty of the collector to deposit "all taxes" collected, as soon as collected, in the depository pending the preparation of his report of such collections and settlement thereon which shall bear interest and are secured by the depository bond. This article negatives the idea that the collector may deduct his commission upon taxes as he collects the same and thereby invest the same with the character of private funds of his own. That article, together with articles 7610b, 7618, and 7619, plainly imply that his commissions may not be deducted by him nor paid to him by the depository until his reports of state and county tax collections have been approved by the proper authorities. The report of the January, 1924, collections, could not have been made at the time the bank closed.

We are therefore of the opinion that no part of such January collections were appellee's private funds when the bank closed; that such collections were public funds, secured by the depository bond and interest bearing. They were for that reason not secured by the depositors' guaranty fund.

[2] The balance of the money claimed by appellee represented private funds obtained from other sources and deposited by him in the bank to the credit of E. B. Kiser, tax collector, as heretofore indicated; also commissions upon taxes collected prior to January, 1924, which had been reported and approved. The view of the majority with respect to this portion of the money sued for is as follows: The private funds thus deposited presents an improper commingling thereof with the public fund. We do not think the private funds thus deposited were secured to the appellee by the depository bond, or that they were properly interest bearing under the contract of the depository. In this connection it should be noted, too, that Kiser testified without contradiction that he had not been paid any interest on the money claimed by him. His effort to establish these deposits of private funds as secured by the depositors' guaranty fund is not to be rejected upon the theory alone that he was secured in these deposits by the depository bond, or that the depository had paid or contracted to pay him interest thereon.

As to the commissions upon collections earned and approved prior to January, 1924, these ceased to be secured to him by the bond and became noninterest bearing upon the approval of his reports. So far as we are advised, the law does not expressly provide for the segregation thereof and withdrawal from the public fund, but it certainly did not contemplate that such commissions should remain commingled with the public fund. In our opinion there is implied authority for the collector to withdraw from the depository commissions thus earned and approved. Indeed, it is his duty to do so, for it is obviously improper for private funds to ever be commingled or to be permitted to remain commingled with a public fund.

In the opinion of the majority, the action of the collector in thus commingling his private funds with the public fund in the depository and permitting his commissions upon collections prior to January, 1924, to remain commingled with such fund, precludes recovery against the guaranty fund for two reasons:

(1) All money to the credit of the tax collector in his official capacity in the county depository is prima facie a public fund and is subject to the payment of all tax collections due by the collector to the state and county, and the payment thereof is secured to the state and county by the depository bond. The facts in this case afford an apt illustration in support of this view. At the time the bank failed Kiser had on deposit in three other banks tax collections to the amount of $10,033.23, which he had not had time to place in the depository. This money had been collected in the two or three days prior to the failure of the depository while upon a tax collection tour over the county. He had placed it temporarily in those banks for safekeeping until he could transfer it to the depository. After the failure of the depository he remitted these collections to the proper authorities. If, for any reason, these collections had not been so remitted, we are of the opinion that the money in the depository claimed by Kiser as his private fund was subject to the payment thereof, and the fund claimed by Kiser to that extent was a public fund deposit within the meaning of article 486, R. S. In the contingency instanced, if suits had been brought by the state and coun-

ty for said $10,033.23 against the collector, the depository, and the sureties upon its bond, we do not think the depository and its sureties could have defended upon the ground that any part of the deposit to the credit of Kiser, tax collector, was his private fund and they were accountable to Kiser therefor and not to the state and county. When the bank failed on January 28, every dollar now claimed by Kiser then to his credit in the depository as tax collector represented and took the place of the $10,033.23 which he then had on deposit in other banks. Upon the date the bank failed, Kiser, as shown, had collected for the month of January taxes amounting to considerably more than the total amount then to his credit as tax collector in the depository. In our opinion the entire amount then to his credit in the depository was therefore a fund to which the state and county could rightfully look for the payment of all the taxes thus collected. If so, it was a public fund representing taxes collected and secured by the depository bond.

[3] (2) The only obligations secured by the depositors' guaranty fund are noninterest bearing and otherwise unsecured deposits. In Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, Chief Justice Cureton said:

"A depositor is one who delivers to or leaves with a bank money, or checks or drafts the commercial equivalent of money, subject to his order, and by virtue of which action the title to the money passes to the bank."

In support of this definition, Lankford v. Schroeder, 47 Okl. 279, 147 P. 1049, L. R. A. 1915F, 623, was cited, in which the court said:

"That the plaintiff was not a depositor entitled to payment of his claim out of assets in the hands of the bank commissioner or out of the state guaranty fund we think is clear. A depositor who is protected from loss by a failing bank is one who takes his money or its equivalent and places it, or causes it to be placed, in the bank to his credit, subject to his right to check it out or withdraw it from the bank at will."

[4] We have no doubt that when private funds of a tax collector, by inadvertence, or otherwise, have been improperly commingling with tax collections deposited in the depository, the depository may lawfully return the same to the collector. Authority to correct errors of that kind is necessarily implied. Commissions due the collector as shown by his approved reports may also be paid by the depository to the collector. Article 7610b. But it is wholly inadmissible to say that a fund to the credit of a tax collector in his official capacity is subject to his order within the meaning of the term as used in Kidder v. Hall.

Such a fund is in no wise an ordinary checking account or otherwise subject to his order. His control over the fund to his credit in his official capacity was limited. He could pay it only to the state and county treasurers, and withdraw from the same the portion to which he personally was entitled. It was not subject to his order in the ordinary meaning of that term, and, under the ruling in Kidder v. Hall, we think no part of it was secured by the depositors' guaranty fund. While by no means directly in point, the following authorities, we think, support this view of the effect of the ruling in Kidder v. Hall. Chapman v. Tyler County (Tex. Civ. App.) 259 S. W. 301, and Austin v. Avant, 277 S. W. 409, recently decided by this court.

For the reasons indicated, the court, in the opinion of the majority, erred in establishing the plaintiff's demand as secured by the depositors' guaranty fund. The judgment will be reversed and rendered in conformity with this ruling.

Reversed and rendered.

WALTHALL, J. (dissenting). I do not concur in the conclusions reached by the majority members of this court in this case, and will here express my grounds of dissent. I think the statement of the facts in the majority opinion, so far as made, is sufficiently stated. Kiser duly presented to the banking commissioner his claim against the depository bank for $5,960.81 as an unsecured and noninterest bearing deposit. The banking commissioner rejected the claim and Kiser in due time brought this suit against the then banking commissioner and the state banking board, as then constituted, and the Pecos Valley State Bank, to recover said sum, and to have same classified as a general deposit secured by and payable out of the depositors' guaranty fund.

On the trial it developed that Kiser was claiming and suing for $5,960.81, basing his claim on the ground that part of said claim was due him as commissions as tax collector and which commissions he had not deducted from tax collections before depositing same in the county depository, and that in addition to his commissions he had in the deposits made his individual funds not commissions, and that the commissions and individual funds amounted to the sum sued for. The view of appellants, as manifested by their answer, is to the effect that Kiser having collected the taxes due the state and county and deposited same in the bank as county depository to his credit as tax collector, the funds sued for are a part of the funds of the state and the county, and are secured by the depository's interest bearing bond, and that for said reason Kiser is not entitled to same, and is not entitled to have the amount sued for made payable out of the guaranty fund.

It seems quite clear to me, from the evidence, that Kiser had a personal current account in the bank of many years standing; that in some way, not made clear, his personal account in the bank, not a part of his commissions as tax collector, became a part

of his account styled "E. B. Kiser, Tax Collector." Beginning with March, 1923, Kiser's deputy, R. G. Middleton, who seems to have had charge of the tax collections, placed all tax collections in the bank, and they were placed by the bank officials to Kiser's personal account. Kiser did not receive a salary for collecting taxes, but collected on a fee or commission basis.

Without stating the reasoning of the witnesses, or in detail the various amounts of money received by Kiser as sheriff, such as serving citations, salary paid by the county as custodian of its property, sheriff's sales, amounts made in private trades, as disclosed by the record, nor stating in detail the taxes collected in 1923, and in 1924, as shown by the witnesses in connection with the tax collector's monthly reports, and the disbursements made to the various departments, I think it is sufficiently made to appear that at the time of the closing of the bank by the banking commissioner on the 28th day of January, 1924, Kiser then had deposited in his name in the bank moneys that did not belong to any of the departments of government for which taxes were collected, and to the full amount of $5,960.81, and which is made up partly of money other than commissions due for the collection of taxes, and partly for commissions due for the collection of taxes, and which commissions Kiser had not retained at the time of depositing the taxes due the various departments pending apportionment and payment to the departments to which the taxes belonged. This deposit, Kiser and the witness Middleton, both testified, belonged to Kiser. There is no suggestion in the evidence that it belonged to anybody else, and the conclusion necessarily follows that it did belong to Kiser. The majority opinion does not controvert that fact. There is a slight difference between the statement of the state comptroller as to amount of the taxes collected due the state and the amount of taxes collected and due the state and in the bank at the time it closed as shown by Kiser, but that difference is accounted for by amounts collected the day before the bank closed, and which did not get into the bank deposit, but was then in the hands of the collector. But the suit here does not present an accounting or settlement between the state, county, or any of the departments with the tax collector.

It further appears, from the undisputed evidence, that none of the money due Kiser by the bank on amounts due him of his individual funds not commissions was in any way secured, or interest thereon paid by the bank or agreed to be paid directly or indirectly. On the amount of money due him for commissions on taxes collected and placed in the depository bank pending apportionment and payment to the several departments none of said amounts was secured, or interest paid or agreed to be paid, unless it will be held that such commissions were secured or interest agreed to be paid by the bank's depository bond, which will be considered later.

It is reasonably made to appear from the evidence, and so stated in the majority opinion, that the sum of $3,207.33 of the $5,960.81 is due Kiser on commissions on taxes collected. That amount is arrived at by the testimony of the witness Middleton in connection with the tax stubs showing the full amount of tax collections and paid into the bank, what they were for; the amounts remitted to the several departments and the receipts for amounts paid leaving a balance in the bank, as above, as commissions.

In addition to the above, it is shown by the evidence that $3,207.33 above the amount of the tax commissions was placed in the bank on Kiser's account, making a total balance in the bank to Kiser's credit which Middleton and Kiser testified belonged to Kiser in excess of the amount of Kiser's commissions. Both Kiser and Middleton testified that no money was placed in this account except Kiser's personal money and the taxes, and that fact is not controverted.

It is made to appear by appellants that since the trial of this cause in the district court, J. L. Chapman, then banking commissioner, has resigned said office, and that Chas. O. Austin was appointed in his place and stead, and has duly qualified as such, and that W. A. Keeling, then Attorney General of Texas, has ceased to be such official, and that Dan Moody is now the duly elected and qualified Attorney General, and that S. L. Staples, then state treasurer, has ceased to be such official, and that W. Gregory Hatcher is now the duly elected and qualified state treasurer, thus changing the membership of the state banking board, as above. The above-named officials in the capacities stated are substituted as appellants in the places of those they have succeeded in office as above.

Appellants, as above substituted, present twelve propositions assigning error and insist that the case should be reversed and remanded. Many of the propositions are based upon statements in the propositions of what the facts are assumed to be. I will discuss only such questions which seem to me to be conclusive of the issues presented.

Appellants, in several similar propositions, insist that where a tax collector, without deducting the commissions he was entitled to, deposits taxes collected by him for the state and county in the county depository, title thereto vests in the depository, and the depository thereby becomes indebted to the state and county for such deposit, and the tax collector cannot recover the same or any part thereof on the ground that the deposit included commissions that he should have deducted before making the deposit.

Appellants make the further contention

that the $5,960.81 recovered by Kiser having been deposited by him, in his official capacity of tax collector in the depository bank, such deposit became interest bearing, and secured by the depository bond, and for that reason was not entitled to be classed as a general noninterest bearing unsecured deposit payable out of the guaranty fund.

I think the above two propositions, controlled somewhat by the same statutory provisions, may be considered together. It might be again remarked, however, that of the $5,960.81 sued for and recovered $3,207.33 were for commissions on taxes collected; the rest of the amount was Kiser's individual money, not commissions. I think that when the collector deposited the money, the amount of his commissions, in the depository bank, the identical money deposited became the bank's money just as any other deposit of money in a bank. But I think it does not follow that because of the deposit the bank would not owe the collector for the amount of the deposit unless it is true, as said in the proposition, that the depository by reason of the deposit becomes indebted to the state and county for the whole deposit.

The inquiry here is: What deposits made by the tax collector of the taxes collected in the depository bank were secured by the depository's bond? Certainly only secured deposits were interest bearing deposits.

Article 2440, V. S. Supp. 1918, provides for the selection by the commissioners' court in each county to receive proposals from such banking institutions in the county as "may desire to be selected as the depository of the funds of such county."

Article 2441, V. S. Supp. 1918, provides that the bidder shall deliver to the county judge "a sealed proposal, stating the rate of interest" the bidder "offers to pay on the funds of the county."

Article 2442 makes it the duty of the commissioners' court to select "as the depository of all the funds of the county" the bidder "offering to pay the largest rate of interest per annum for said funds. The interest upon such county funds shall be computed upon the daily balances to the credit of such county with such depository, and shall be payable to the county treasurer monthly, and shall be placed to the credit of the jury fund or to such funds as the commissioners' court may direct."

Article 2443, V. S. Supp. 1918, provides that the amount of the bond of the depository "shall in no event be for less than the total amount of revenue of such county for the next preceding year." The article prescribed the conditions of the depository's bond to be "for the faithful performance of all the duties and obligations devolving by law upon such depository, * * * and that said county funds shall be faithfully kept by said depository and accounted for according to law."

Article 2443a provides for additional bond whenever, after the creation of the county depository, there shall accrue to the county or any subdivision of the county, any funds or moneys from the sale of bonds or otherwise.

Article 2444, V. S. Supp. 1918, provides that as soon as the depository's bond has been given and approved by the commissioners' court, and the state comptroller of public accounts, an order shall be made and entered upon the minutes of said court designating such bidder "as a depository of the funds of said county until sixty days after the time fixed for the next selection of a depository." After stating some duties of the county treasurer with reference to the transfer of "funds belonging to the county" to the depository, the article provides:

"And thereupon, it shall also be the duty of the tax collector of such county to deposit all taxes collected by him, or under his authority, for the state and such county and its various districts and other municipal subdivisions, in such depository or depositories, as soon as collected, pending the preparation of his report of such collections and settlement thereon, which shall bear interest on daily balances at the same rate as such depository or depositories have undertaken to pay for the use of county funds, and the interest accruing thereon shall be apportioned by the tax collector to the various funds earning the same. The bond of such county depository or depositories shall stand as security for all such funds. If the tax collector of such county shall fail or refuse to deposit tax money collected as herein required, he shall be liable to such depository or depositories for ten per cent. upon the amount not so deposited and shall in addition be liable to the state and county and its various districts and other municipal subdivisions for all sums which would have been earned had this provision been complied with."

Now it will be observed from the above articles of the statute creating county depositories that the purpose of the Legislature evidently was to more effectually secure only the public funds belonging to the several departments of our state government. To effect that purpose the Legislature creates a depository of the public funds only; the bidder for the public funds to pay interest on the public funds only. The commissioners' court, from among the bidders, selects the depository of only the public funds. The interest to be paid is computed solely upon the daily balances of public funds and payable to the county treasurer monthly. The depository's bond is fixed solely on the basis of the total amount of the revenue of such county, and conditioned for the faithful performance of all the duties and obligations devolving by law upon such depository, and that the deposited county funds shall be faithfully kept by said depository and accounted for according to law. After stating the duties of the county treasurer as set out above, we come to a consideration of that part of article

2444 above stated and having reference to the duty of the tax collector in considering what funds are required to be deposited by the collector in ascertaining what funds are secured by the depository's bond, and upon what funds the depository is obligated to pay interest. It provides that he shall deposit all taxes collected for the state and county in such depository as soon as collected pending the preparation of his report of such collections and settlement thereon. The funds the collector is required to deposit are the funds secured, and bear interest on daily balances. In considering the funds required to be deposited with the depository by the collector, we must look to the terms used and the purpose of the statute creating the depository. Such a construction should be adopted as will make all the provisions of the statute consistent with each other. One section or article of a statute may stand as a context for another. I think that where, as here, all previous articles of the statute above referred to, in creating the county depository and prescribing the things to be done, the funds to be secured and the way in which the security of the funds is accomplished, may be looked to in ascertaining the legislative intent in making it the duty of the collector of taxes "to deposit all taxes collected by him, or under his authority, for the state and such county and its various districts and other municipal subdivisions in such depository, as soon as collected, pending the preparation of his report of such collections and settlement thereon, which shall bear interest on daily balances," etc., and in making the bond of the depository stand as security for such funds, and such funds only.

The articles of the statute previous to article 2444, from which the above quotations are made, all refer to the public funds only, and the expression in the quotation, "all taxes" is evidently identified and explained by the clause "for the state and such county," etc., and indicate the funds required to be deposited and disbursed by the collector, and the funds secured by the depository's bond, and upon which funds interest is to be paid. Should we read the tax collector's commissions into the above article of the statute where the articles use the term "county funds," we certainly would put into the statute something which is not written in the statute, and would have the Legislature make a contract with the county depository to secure his commissions and pay him interest thereon. Such interpretation, it seems to the writer, would be confusing and not within the legislative purpose in creating a county depository for the public funds and the security therefor, and not within the purpose of the depository in its desire to be selected as the "depository of the funds of the county," nor in its offer to pay interest "on the funds of the county, computed upon the daily balances to the credit of such county," and made "payable to such county treasurer monthly," and obligating the depository that "the county funds shall be faithfully kept * * * and accounted for."

The verbiage of the depository's bond, it seems to me, excludes the idea that the tax collector is secured by it for any of his commissions deposited with the depository.

Should there be an excess in the deposits made by the collector, as here, above the amounts due the several departments, could it be said that the collector must apportion such excess to the departments, when it clearly appears that such excess is the collector's commissions, or that such excess is secured by the depository's bond? I think not.

Under provisions of articles 7618 and 7619, V. S. Tex. Civ. Stat. 1914, the collector might well have reserved his commission on the deposits when made in the depository, but I find nothing in the statutes that either requires him to do so or forfeits to the depository, or to the state, county, or any district for failing to reserve his commissions when he makes the deposits.

The state, county, or districts certainly could not claim from the depository or the collector any amount of money collected as taxes in excess of the amount due each, and I see no reason why the amount of money put in the depository in excess of the several amounts due the state and county, under the evidence, would not belong to Kiser, to the amount of his commissions.

The contention made that Kiser so mixed and mingled his private funds with public funds deposited by him with the depository that he cannot now recover the same has no application under the evidence and facts of this case. Kiser was not suing for the identical money he put in the bank. It was not necessary for him to identify the money not commissions from the money that was commissions. If he had the amount of money in the bank for which he sued and recovered judgment, and had the right to withdraw such funds at the time of his settlement with departments, it would be immaterial whether the amount was made up from his private funds, not commissions, or from commissions solely, or from both sources, neither fund being secured in any way, or drawing interest, he would be entitled to have either fund or the aggregate of both paid out of the depositors' guaranty fund. The evidence of the witnesses was based upon what they said they had done in putting the money in the bank, and knew they had done so, and it seems clear and uncontradicted that Kiser had in the bank, at the time it closed, the amount of money for which he secured judgment. The manner of keeping the deposits was a matter of bookkeeping, and the duty to keep them separate was that of the bank.

For the reasons stated, I express my dis-

sent, and suggest that the case should be affirmed.

### On Rehearing.

HIGGINS, J. It seems to be contended by appellee that the commingling of funds was due to an error in bookkeeping on the part of the bank, or that in some other manner not pointed out it was the bank's fault. The record does not bear this out at all. It shows that Kiser had only the two accounts stated in the main opinion; that he and his deputy must have known this because they made their deposits to the credit of the account of E. B. Kiser, tax collector, and the same was credited in the passbook of that account. Certainly the bank was not responsible for Kiser's action in depositing his private funds in that account and for him failing to withdraw his commissions when his reports had been approved by the proper authorities.

[5] We deem it proper to make this additional observation, for the majority does not think that any error or wrongful action on the part of the bank for which Kiser is not responsible would deprive him of the right to establish his claim against the depositors' guaranty fund.