(117 So. 216)

### CORINTH STATE BANK v. FIRST NAT. BANK OF FLORENCE. (8 Div. 981.)

Supreme Court of Alabama. March 22, 1928.

Rehearing Denied May 31, 1928.

1. Subrogation ⬅➔41(6)—As respects right to subrogation, evidence held sufficient to show that loan was used to pay balance due on note secured by mortgage.

In suit by surviving partner for settlement of partnership affairs, in which bank filed cross-bill whereby it sought to be subrogated to security of mortgage on partnership property for money advanced to partnership to take up note secured by the mortgage, evidence *held* sufficient to show that part of money loaned was used to pay balance due on one of notes secured by mortgage.

2. Subrogation ⬅➔23(1)—One lending money to pay prior incumbrance may be subrogated to rights of prior incumbrancer whose claim is satisfied.

Where money is expressly advanced to extinguish a prior incumbrance and is used for that purpose, with just expectation on part of lender of obtaining a valid security, lender may be subrogated to rights of prior incumbrancer

whose claim he has satisfied, there being no intervening equity to prevent, and such incumbrance will be kept alive as against strangers even if it has been actually canceled and satisfied of record, where this can be done without injury to them; Code 1923, § 9553, relating to subrogation in favor of sureties, not being applicable.

3. Subrogation ⬅➔28—Subrogation may not be decreed unless whole debt is paid.

Subrogation may not be decreed unless whole debt is paid.

4. Subrogation ⬅➔28—Bank lending money to take up mortgage note, and thereafter offering to pay only remaining unpaid mortgage note, held entitled to be subrogated to holder's rights.

Where bank made loan with understanding that borrower would pay balance due on mortgage debt and take up note and transfer it to bank with other collateral securing the loan, but holder of note refused to assign it to bank and marked it "Paid and canceled," *held* that bank thereafter having offered to pay holder and his assignee full amount of the only remaining unpaid note secured by the mortgage satisfied the rule against subrogation unless whole debt is paid, and was entitled to subrogation to holder's rights under the mortgage.

5. Subrogation ⬅➔33(3)—Bank lending money to take up balance of mortgage note held not entitled to be subrogated to holder's rights as respects amount previously paid by mortgagor.

Where bank made loan with understanding that borrower would pay balance due on mortgage debt and take up note and transfer it to bank with other collateral securing loan, but holder of note refused to assign it to bank and marked it "Paid and canceled," *held* that bank was not entitled to be subrogated to holder's rights under mortgage as respects amount paid by mortgagor on note before the loan was made.

6. Subrogation ⬅➔35—Bank refusing to accept mortgagor's note in lieu of assignment of mortgage note paid by its loan held not to waive right of subrogation.

Where holder of mortgage note refused to assign it to bank which made loan to mortgagor to take it up, or to deal otherwise with note than by marking it "paid and canceled," and thereafter mortgagor, in an attempt to make bank whole, gave it a note which bank expressly declined to accept in lieu of the canceled note secured by the mortgage, but accepted merely as additional security and thereafter bank included new note in list of collaterals filed in court in liquidation of maker's insolvent estate, *held* that bank did not thereby waive its right to be subrogated to rights of holder of mortgage note paid from proceeds of loan.

7. Subrogation ⬅➔35—Intentional relinquishment of known right must be shown by clear evidence to prove "waiver" of right to subrogation.

To establish "waiver" of right to subrogation, an intentional relinquishment of a known right must be shown by clear evidence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

Appeal from Circuit Court, Colbert County; Charles P. Almon, Judge.

Bill in equity by Homer Marshall against the Corinth State Bank, the First National Bank of Florence, and others, and cross-bill by the Corinth State Bank. From a decree dismissing the cross-bill, cross-complainant appeals. Reversed and remanded.

Kirk & Rather, of Tuscumbia, for appellant.

Where one pays or advances money to pay the mortgage, at the instance of the mortgagor, and for his benefit, such one is by equitable assignment entitled to be subrogated to the lien of the mortgage for reimbursement. Arnett v. Willoughby, 190 Ala. 530, 67 So. 426; Tenn. Valley Bank v. Sewell, 214 Ala. 362, 107 So. 834; First Ave. C. & L. Co. v. King, 193 Ala. 438, 69 So. 549. The right of subrogation exists as against those claiming under a second mortgage, taken with notice of the first mortgage. Arnett v. Willoughby, supra. The burden of the second mortgagee will not be increased by such subrogation. Platte Valley Co. v. B. G. L. Co. (C. C. A.) 202 F. 692, 45 L. R. A. (N. S.) 1137; Hampton v. Counts, 202 Ala. 331, 80 So. 413; Cook v. Kelly, 200 Ala. 133, 75 So. 953; Allen v. Caylor, 120 Ala. 251, 24 So. 512, 74 Am. St. Rep. 31. Appellant's lien was not affected by the later note given by Marshall to it; same not having been accepted in lieu of the former note. 27 Cyc. 1413, 1414; Gravlee v. Lamkin, 120 Ala. 210, 24 So. 756; Higman v. Humes, 127 Ala. 404, 30 So. 733.

S. W. Frierson, of Florence, for appellee.

Payment by the person seeking subrogation is fundamental and essential to the assertion of the right. There can be no subrogation to the rights of another unless the claim of that other is fully satisfied. 37 Cyc. 379, 408; 27 A. & E. Ency. Law (2d Ed.) 203; Robinson v. Sullivan, 102 Miss. 581, 59 So. 846. Acceptance of an independent security, which is not cumulative merely, and the enforcement of which is not consistent and cannot be concurrent with the enforcement of the right of subrogation, displaces and defeats the latter right. Watts v. Eufaula Nat. Bank, 76 Ala. 474; 37 Cyc. 383, 431.

SAYRE, J. The original bill in this cause was filed by Homer Marshall as surviving partner of Marshall Tie Company, a partnership composed of complainant and E. D. Marshall, now deceased, for the settlement of the affairs of the partnership. The Corinth State Bank of Corinth, Miss., and the First National Bank of Florence, Ala., were made parties defendant on an averment that they held or claimed liens on a tract of 10,000 acres of land, which had been the property of the partnership, in Colbert county. The question now presented for decision arose out of a cross-bill filed by the Corinth bank in which it averred that, on the request of E. D. Marshall, it had furnished the money to pay a note for $8,529.84, held by Franklin R. Webber of Boston, Mass., and secured by a first mortgage on the Colbert county land, with the agreement that the repayment of the money so advanced should be secured by the lien of the mortgage. Cross-complainant sought to be subrogated to the security of the mortgage held by Webber. The Florence bank showed that it had held a mortgage on the Marshall land, executed after the Webber mortgage which was duly recorded —a second mortgage in fact, though it did not purport to be a second mortgage—and that it had foreclosed the mortgage purchased from Webber and at the foreclosure sale had purchased the land at a price of $25,000, something less than its second mortgage indebtedness, and denied any right of subrogation in the Corinth bank. On final hearing on pleading and proof, the chancellor dismissed the cross-bill. The Corinth bank appeals.

[1] The note for $8,529.84, mentioned above, was the fifth of a series of six notes for like amounts given to secure the purchase price of the Colbert county land. E. D. Marshall at its due date had made a payment of $5,000 on the fifth note of the series, and, in order to raise funds for the payment of the balance due on the fifth and as well for the payment of the sixth, not then due, Marshall applied to the Corinth bank for a loan. The bank let him have $14,000—not as much as he asked for—taking collateral security, which afterwards in large part proved to be worthless. The testimony of several witnesses goes to show that in negotiating the loan from the Corinth bank to E. D. Marshall it was distinctly understood and explicitly agreed between the parties to the transaction that out of the funds so secured Marshall would pay the balance due on the fifth note held by Webber, take up the note, and turn it over to the bank to be held, along with the rest of the collateral, as security for the loan. There is no contradiction of this testimony, nor anything unusual or unreasonable in the nature of the transaction, and we are unable on any adequate ground to hold that the transaction was not negotiated or consummated in the manner and with the result detailed by these witnesses. Not exclusively by any means, but in the main as we gather, the defense interposed by the Florence bank rested upon the proposition that there was a failure of proof going to show that the money borrowed from the Bank of Corinth, or so much thereof as was necessary to pay the balance due on the note in question, went in fact to the payment of that note. We are unable on the record to deny the fair and reasonable inference that it was so applied. The loan to Marshall was con-

summated November 3, 1924. At that time E. D. Marshall, who managed the affairs of the partnership, was heavily involved and was looking around for money to keep his business on foot. He owed the Florence bank $30,000. He owed the Bank of Princeton, Ky., with which ordinarily he did business, a much larger sum. Webber was pressing for payment of the fifth of the purchase-money notes then past due. The Princeton bank, by representations concerning the character and financial ability of Marshall, helped him to get the loan from the Corinth bank with which, prior to that time, he had had no dealings. The $14,000 was transmitted to the Princeton bank November 3, 1924. Webber, in Boston, acknowledged the receipt of a check for $4,633.40, on November 6, 1924, of which amount $4,113.69 went to pay the balance due on the fifth year note, but denied Marshall's request for a transfer of the note for the assigned, and doubtless the true, reason that the sixth of the purchase-money notes held by him remained to be paid, and he did not wish any one else to own an interest in his mortgage. The note was marked "Paid and canceled," and returned to Marshall. Mr. Pomeroy, apropos of cases circumstanced as is this, says:

"Whether one not himself paying the debt, but loaning money to the debtor upon his personal security, but with the understanding that it is to be used in removing an incumbrance, is thereby entitled to claim the benefit of the incumbrance removed, is a matter of doubt." 5 Pom. Eq. Jur. (2d Ed.) § 2347, citing cases pro and con in the footnote.

[2] In this state our predecessors Brickell, Stone, and Somerville, in Bolman v. Lohman, 74 Ala. 507, 511, held the rule to be well settled that—

"Where money is expressly advanced in order to extinguish a prior incumbrance, and is used for this purpose, with the just expectation on the part of the lender of obtaining a valid security, * * * the lender * * * may be subrogated to the rights of the prior incumbrancer, whose claim he has satisfied; there being no intervening equity to prevent"—citing Kitchell v. Mudgett, 37 Mich. 82; Sheldon on Subrog. §§ 8, 20; Dixon on Subrog. 165, which fully sustain the decision.

In Bolman v. Lohman, the court cited with approval the cases of McWilliams v. Jenkins, 72 Ala. 480, and Irwin v. Bailey, 72 Ala. 467, where, in the first-named case, the funds of one party were appropriated, without his consent, to discharge a lien on land, he was held entitled to subrogation, by a declaration that he thereby became the equitable assignee of the lien for reimbursement, and, in the other (72 Ala. 467) the discharge of the lien was held to be a purchase for the benefit of the person furnishing the funds, rather than an extinguishment. These cases have been followed on numerous occasions. Allen v. Caylor, 120 Ala. 252, 24 So. 512, 74 Am. St. Rep.

31; Bigelow v. Scott, 135 Ala. 236, 33 So. 546, and cases there cited; First Avenue Coal Co. v. King, 193 Ala. 438, 69 So. 549; Arnett v. Willoughby, 190 Ala. 530, 67 So. 426. In such cases it has been determined that the court of equity will keep alive the incumbrance as against strangers and third parties, even though such incumbrance "has been actually canceled and satisfied of record, where this can be done without injury to them." First Avenue Coal Co. v. King, supra; Fouche v. Swain, 80 Ala. 151; Woodruff v. Satterfield, 199 Ala. 479, 74 So. 948, and authorities cited in the last-named case. Our statutes on the subject of subrogation in favor of sureties do not affect this case. Code, § 9553.

[3, 4] Appellant's proposal to take over the fifth note would have left Webber in possession and ownership of the sixth note unpaid. In the situation thus disclosed it may be suggested that the equitable rule will not permit subrogation to be decreed until the whole debt is paid. Atherton v. Tesch, 202 Ala. 448, 80 So. 832; Cross v. Bank of Ensley, 205 Ala. 274, 87 So. 843. The reason for the rule is that, so long as the party, whose rights are claimed for use in protecting the party who would invoke the doctrine, remains unsatisfied, though in part only, there will be no interference with his rights or securities which might, even by bare possibility, prejudice, or embarrass him in the collection of his claim. The rule, so stated, is approved in Atherton v. Tesch, supra. This is the thought Webber had in mind when he refused to assign the fifth year note to appellant. But it appears, as we have already shown, that appellant had provided for the payment in full of the fifth year note, and that, before filing its answer and cross-bill, had offered to pay to Webber the full amount of the indebtedness evidenced by the sixth note of the series then due, but it then transpired that said note had been sold and assigned to the Florence bank, appellee, which had been apprised of appellant's claims in the premises. And now in its cross-bill appellant offers to pay to the Florence bank the amount due to it on account of the sixth note of the series. This we think removes any tenable objection on the part of the Florence bank to the subrogation sought by the Bank of Corinth. It satisfies the reason for the rule against subrogation unless the whole debt is paid. In other words, we treat the Corinth bank as assignee in equity of the fifth year note and the security behind it to the extent it contributed money to its satisfaction, subject to the lien of the sixth note—thus, we conceive, giving effect to the equitable doctrine of subrogation, and this without impairing the authority of Atherton v. Tesch, supra, where the facts were different in some respects. Nor does it impair the security of the Bank of Florence as it was at the time when appellant advanced

the money to pay the balance due on the fifth note, for that note as well as the sixth of the series was secured by a first mortgage, to which the Florence bank's second mortgage was subordinate.

[5] But we do not see that appellant is entitled to subrogation as to the $5,000 paid to Webber on account of the fifth note prior to the loan obtained from appellant; Marshall had paid $5,000 out of his private purse; but that amount went to pay a debt of the partnership for which as partner he was responsible. His purpose in making the loan with the Bank of Corinth, in addition to paying the balance due to Webber on the fifth note, was, it may be conceded, to reimburse himself as against his partner for the $5,000 payment. No claim for subrogation can be maintained on that account. As to that, the bank was not entitled to subrogation against Webber, for it advanced no money to pay $5,000 of the note then due. That had already been paid. But, as to the balance of the fifth note, $4,113.69, appellant is entitled to subrogation as against the Bank of Florence. If foreclosure shall be necessary, the Bank of Florence will first be paid the amount it expended in the purchase of the sixth note.

[6, 7] After Webber had refused to deal with the fifth note otherwise than by marking it "Paid and canceled," Marshall in some sort of an effort to make the Bank of Corinth whole, sent to it a note for $9,149.65, made by Marshall Tie Company, Homer Marshall, and George Land, and payable to E. D. Marshall. This note, it afterwards appeared, was of no value. This is insisted on, as a waiver of subrogation; but the evidence goes to show that the Bank of Corinth did not accept the note in lieu of the fifth note of the series secured by the mortgage held by Webber—expressly declined so to do—but as additional security only (Watts v. Eufaula National Bank, 76 Ala. 474), and that, as such, after the death of E. D. Marshall in January, 1925, and after Marshall's insolvent estate was in process of liquidation in the circuit court of Lyon county, Ky., appellant filed with the Kentucky court a list of the collaterals held by it, including the last-mentioned note. This, it is urged, was a waiver of its claim of subrogation to the security which stood behind the fifth year note; but our judgment is that the facts do not show an intentional relinquishment of a known right such as it is necessary to show by clear evidence when a waiver is pleaded. 40 Cyc. 252, 269. We find nothing in the facts irreconcilable with the doctrine of subrogation, nor does the application of the doctrine in the circumstances stated oppose the language or the reason of the decision in Watts v. Eufaula National Bank, to which we have referred.

The decree under review will be reversed, and the cause remanded, in order that it may be disposed of by a decree in agreement with this opinion.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.