# JANUARY, 1931

BEN J. FOX, INDEPENDENT EXECUTOR v. J. H. KROEGER.

No. 5266.   Decided January 7, 1931.
(35 S. W., 2d Series, 679.)

*Edward L. Dunlap,* for plaintiff in error.

The court committed error in rendering judgment for the plaintiff herein upon the note sued upon by plaintiff because such action is contrary to law, in this; that plaintiff fully paid off and discharged the note herein sued upon the 28th day of June, 1922, by executing and delivering to payee bank his negotiable note on said date in full satisfaction of the note herein sued upon and upon which plaintiff was a surety and by such action on the part of plaintiff as surety on said note herein sued upon said note for $769.03 was fully satisfied and discharged and rendered functus officio as to all parties thereon and that plaintiff could not thereafter legally bring action thereupon against the principal thereof, the Estate of Mrs. C. M. Fox, deceased, but that the cause of action of plaintiff, as surety upon said note for $769.03, was upon the implied assumpsit and that his cause of action should have been instituted within two years from and after the said payment by him of his principal's debt to-wit, within two years from the 28th day of June, 1922; that plaintiff did not within two years after said date institute his action upon the implied assumpsit, but, that, as shown by the record filing of this cause of action upon the original note, his action was instituted upon the original note on the 26th day of June, 1926, more than two years after his cause of action arose.   Holliman v. Rogers, 6 Texas, 91; Faires v. Cockrell, 31 S. W., 190; Willis v. Chowing, 40 S. W., 397; Boyd v. Beeville, 44 S. W., 287; Whitaker v. Sanders, 52 S. W., 638; Hays v. Housewright, 133 S. W., 922; Hubbert v. State, 147 S. W., 267; Yndo v. Rivas, 180 S. W., 96; Hazelton v. Holt, 285 S. W., 1115.

*C. C. Carsner,* for defendant in error.

A surety on a promissory note, for the accommodation of the maker, could purchase the obligation, executed by both of them,

from the payee Bank and maintain a suit thereon against the maker and principal. Durham v. Dowell, 265 S. W., 425; Brokaw v. Collett, 230 S. W., 790; Security Nat'l Bank of Dallas v. Kynerd, 228 S. W., 123; Art. 5939, sec. 121 and Art. 5934, sec. 50, R. S. 1925.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This suit was begun in the County Court of Victoria County by J. H. Kroeger, against Ben J. Fox, independent executor, of the estate of Mrs. C. M. Fox, deceased, upon a promissory note in the principal sum of $769.03, dated June 28th, 1921, due twelve months after dated, signed by Mrs. C. M. Fox, as principal, and J. H. Kroeger as surety, and payable to the Levi State Bank & Trust Company of Victoria, Texas. It seems to be admitted that Kroeger was an accommodation surety upon the note. Mrs. Fox died on February 3rd, 1922, prior to the maturity of the note. When the note matured the bank called upon Kroeger for payment. On or about the due date Kroeger went to the bank and executed and delivered to it his own promissory negotiable note in full satisfaction for the Fox note, and for the amount due thereon, and the bank by assignment written on the back of the Fox note, transferred the same to Kroeger, and delivered to him the original note. More than two years after Kroeger paid the note, but less than four years after the due date of the original note, Kroeger instituted suit against Ben J. Fox, executor of the estate of Mrs. C. M. Fox on the original note.

The defense was by demurrer in abatement and by the plea of two years statute of limitation. The trial was before the court and final judgment entered in favor of Kroeger for the full amount of the principal, interest and attorney's fees of the Fox note. On appeal, the Court of Civil Appeals for the Fourth Supreme Judicial District of San Antonio affirmed the judgment of the County Court. 5 S. W., (2d) 180. The case is before the Supreme Court on writ of error granted on application of Fox.

By his petition in the trial court, Kroeger declared upon the note itself, and prayed for judgment for the principal, interest and attorney's fees as therein provided.

Fox contended in the county court, and Court of Civil Appeals and now contends that Kroeger's only cause of action was upon the implied promise of reimbursement after he had paid off and dis-

charged the note upon which he was surety, and that his cause of action was barred after two years from the time of accrual thereof, such accrual being the time of payment by him of the Fox note. Kroeger contended in the trial court, and Court of Civil Appeals, and now contends that a surety on a promissory note, for the accommodation of the maker, can pay off the obligation and have the same transferred to him, and maintain a suit against the original maker on the note itself. The Court of Civil Appeals sustained the contention of Kroeger, that is, the Court of Civil Appeals held that a surety who pays the obligation of his principal, and takes a transfer thereof to himself, can maintain a suit upon the obligation itself. It is admitted by both parties that if the suit can be maintained upon the note it is not barred by limitation, but if the cause of action must be asserted upon the implied promise of reimbursement it is barred by the two years statute of limitation.

It seems that the question here presented has been one of great difficulty to the courts of this State, and on which the opinions of our Supreme Court, including the Commission, have seriously conflicted. In the early case of Holliman v. Rogers, 6 Texas, 91, our Supreme Court announced the rule that where the surety paid the obligation of the principal, the obligation itself was extinguished, and the remedy of the surety against the principal was on an assumpsit, or the obligation implied by law on the part of the principal to reimburse the surety. This rule was reversed in the later case of Sublett v. McKinney, 19 Texas, 439, and the rule announced that in such a case the surety is subrogated to the very debt itself and can maintain an action thereon, whether it be assigned to him or not, because he is entitled to have it assigned, and the law will regard that as done which ought to have been done. The Supreme Court adhered to the rule announced in Sublett v. McKinney in the subsequent cases of Williams v. Durst, 25 Texas, 667, 78 Am. Dec., 548; Mitchell v. DeWitt, 25 Texas, Supp., 181, 78 Am. Dec. 561; Tutt v. Thornton, 57 Texas, 35 (Com. App.), and Carpenter v. Minter, 72 Texas, 370, 12 S. W., 180 (Com. App. Opinion Adopted), and this rule does not seem to have been questioned by any opinion of the Supreme Court until the opinion in Faires v. Cockrell, 88 Texas, 428, 31 S. W., 190, 639, 28 L. R. A., 528. In the case last mentioned the Supreme Court, speaking through Judge Brown, expressly reversed the rule announced in Sublett v. McKinney, and the subsequent cases above mentioned, and went back to and reaffirmed the rule announced in Holliman v. Rogers, supra. All subsequent

opinions by our Supreme Court which adhere to the rule announced in Faires v. Cockrell, do so on the authority of that case. However, in the very late case of Moore v. Jenkins, 109 Texas, 461, 211 S. W., 975, our Supreme Court speaking through Judge Greenwood, very clearly gives warning that it is dissatisfied with the holding in Faires v. Cockrell, as regards the rights and remedies of a surety who has paid the obligation of his principal. In that case the Commission recommended an affirmance of the judgment on the ground that payment by the surety extinguished the debt. The Court refused to adopt this holding, saying that the case did not call for an adjudication of that question, and then proceeded to apply the rule announced in Faires v. Cockrell, where liens existed to secure the original debt. This case seems to be the last direct expression by our Supreme Court. However, in the fairly late case of Security Nat. Bank v. Kynard, 228 S. W., 123 (Tex. Com. App.) delivered long after the opinion in Faires v. Cockrell, the right of a surety who had been compelled to pay the obligation of his principal to have the obligation assigned to him, and to maintain an action on the instrument itself was upheld. The Supreme Court did not expressly adopt this opinion, but could not have entered the judgment recommended unless it in fact agreed with the holding. It is true that the opinion in Security Nat. Bank v. Kynard attempts to distinguish that case from Faires v. Cockrell by saying that Faires v. Cockrell involved the unquestioned satisfaction of the debt of the principal by the surety, while in Security Nat. Bank v. Kynard there was a purchase by the surety of the instrument itself. We do not think the cases can be so distinguished, but that Security Nat. Bank v. Kynard is in direct conflict with Faires v. Cockrell. In fact an examination of Faires v. Cockrell will disclose that it did not involve the remedy of a surety who has paid the debt of his principal, but the remedy of a principal against his co-principal. If we regard the opinion in Security Nat. Bank v. Kynard as the latest Supreme Court authority on the subject it is certainly authority for the rule that a surety who is compelled to pay the debt of his principal has the right to bring an action on the very debt itself, regardless of the questions of security or priorities.

When we come to examine the authorities on the subject, both English and American, we find that the great weight thereof is in favor of the rule that where the surety pays the debt of his principal he is subrogated to all of the rights, remedies, equities, and securities of the principal and can bring an action on the very debt itself. Of

course we do not mean to say that this remedy is an exclusive one, for we think that under our system of jurisprudence, which gives to our courts jurisdiction of cases that are cognizable by such courts, both in law and in equity, that in such a case the surety should have his election of remedies.

An examination of the opinion in Faires v. Cockrell will disclose that the holding therein to the effect that where the surety pays the debt of his principal, and there is no security or right of priority attached to the same, he must pursue his legal remedy, based on the old English case of Copis v. Middleton, 11 Eng. Ch., 128 (2 Law Journal, 83). That case was decided in 1823. When we come to examine the American authorities on the subject we find that the rule announced in Copis v. Middleton, which is known as Lord Eldon's Doctrine, has been generally disregarded by American Courts and jurists. In fact the rule announced in Copis v. Middleton has been materially modified, if not entirely abrogated, by act of Parliament. The act of Parliament referred to expressly provides that in all cases where the surety pays the debt of another he shall be entitled to assignment, and shall be entitled to stand in the place of the creditor in any action or other proceeding at law or in equity. Furthermore, the Texas statute adopting the common law of England means that we adopted same as declared by the courts of the several States and not the common law in force in England in 1840. Grigsby v. Reid, 105 Texas, 597, 153 S. W., 1124, L. R. A., 1915 E, 1, Ann. Cas. 1915 C, 1011.

Under the Civil law the rule is thus stated:

"He to whom a creditor makes over a debt is substituted to the right, and he acquires, together with the credit, the mortgage and privileges which are annexed to it, whether the assignment be made for a valuable consideration or gratis. For, although it be true that the payment extinguishes the debt, and that it seems, for that reason, that the creditor cannot transmit to another a right which is extinguished in his person by the payment, yet the assignment, which is made at the same time, has the same effect as if the creditor had sold his right to him who pays him. And, as to the effect of the assignment, it is the same thing to him who pays for the debtor, whether it be the person who is bound jointly with him for the debt, or his surety, or a third person. The Civil Law (1 Domat, b. 3 sec. 6, art. 1)."

The rule under the Roman law is thus stated by the Supreme Court of Georgia.

"The Roman law goes further than the common law, the well-settled doctrine of which entitles a surety who pays the debt of his principal to an assignment of all the independent securities in the hands of the creditor. By that law, not only is he entitled to these securities, but he is also entitled to be substituted as to the very debt itself to the creditor by way of cession or assignment. The debt in favor of the surety is treated, not as a paid, extinguished debt, but as sold to him,—all its original obligatory force continuing against the principal. The surety is viewed in the light of a purchaser. Lumpkin v. Mills, 4 Ga. 343."

It will be seen from the quotations above that under both the Civil and Roman laws the rule was that the surety paying the debt of his principal was subrogated to all the rights of the original creditor, and could maintain an action on the very debt itself. This is the rule adopted by the Courts of last resort of nearly all of the States and by the Supreme Court of the United States. It is also now the rule in England and Canada.

In support of this holding we call attention to the authorities cited in the annotations under Nelson v. Webster, 68 L. R. A., 1925, page 513; Brannan's Negotiable Instrument Law, 4th. Ed. p. 725, et seq.; Biglow on Bills, Notes & Checks, 3rd Ed. secs. 465, 562 et seq.

From what we have said it follows that we now announce the rule in Texas to be that where the surety pays the debt of the principal he has his election to either pursue his legal remedies and bring an action on an assumpsit, or the obligation implied by law in his favor for reimbursement by the principal; or he can prosecute an action on the very debt itself, and in either event he stands in the shoes of the original creditor as to any securities and rights of priority. What we have already said applies with equal force to all debts whether represented by a negotiable instrument or not.

When we come to consider the instrument sued on in the instant case we find that it is a negotiable instrument, a promissory note signed by Mrs. C. M. Fox as principal, and J. H. Kroeger as surety. Kroeger was compelled to pay the note and on doing so took an assignment thereof, and brings this action on the note itself. In such a case we find that regardless of the question as to what the rule was in this State prior to the passage of our negotiable instrument act, R. C. S. of Texas, 1925, Title 98, Articles 5932 to 5948, inclusive, passed in 1919, the rule as now prescribed by the statute itself regarding negotiable instruments is as hereinbefore announced by us. R. C. S. of Texas, Art. 5939, Sections 119 and 121.

The statute above cited, so far as applicable to this case, reads as follows:

"Sec. 119. A negotiable instrument is discharged:

"1. By payment in due course by or on behalf of the principal debtor;

"2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"* * * * * * * * * *

"Sec. 121. Where the instrument is paid by a party secondarily liable thereon, it is not discharged; but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent endorsements, and again negotiate the instrument, except:

"1. Where it is payable to the order of a third person, and has been paid by the drawer; and,

"2. Where it was made or accepted for accommodation, and has been paid by the party accommodated."

If either Section 119 or Section 121, were considered alone, the language might make each difficult of interpretation, but the two sections must be construed together, and in the light of each other, since they deal with the same subject matter. When so construed, the manifest meaning is that the payment by the principal debtor or by the party accommodated discharges the instrument, but payment by a party secondarily liable, other than the principal debtor or party accommodated, does not discharge or extinguish the debt. Also by the express provisions of Section 121 (2) the party accommodated is excluded from those secondarily liable, payment by whom, does not discharge the instrument. This exception embraces both an accommodation drawer and accommodation endorser. Biglow on Bills, Notes & Checks, 3rd Ed., Secs. 465, 466, 562, 563, 563a, 564, 564a, 565, 565a, 566, 566a, 567 and 568; Brannon's Negotiable Instrument Law, Fourth Ed., page 767 et seq.

It follows from what we have said that under the very terms of our statute it requires payment by the principal debtor to discharge a negotiable promissory note, and that the payment thereof by the surety does not discharge the obligation.

For the reasons stated, the judgments of the Court of Civil Appeals and the trial court, both of which upheld the right to prosecute the suit on the original note itself, should be affirmed.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

*C. M. Cureton,* Chief Justice.