FIDELITY & DEPOSIT CO. OF MARYLAND v. FARMERS & MERCHANTS NAT. BANK OF NOCONA. .

No. 13807.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 7, 1938.

Rehearing Denied Nov. 18, 1938.

Albert B. Hall and Richard L. Hughston, both of Dallas, for appellant.

Benson & Benson, of Bowie, and Vincent Stine, of Henrietta, ·for appellee.

DUNKLIN, Chief Justice.

W. E. Reynolds was duly elected as tax collector of Montague County, for two terms of office, and gave his official bonds, as such, in favor of Montague County, with the Fidelity & Deposit Company of Maryland, as surety thereon. Those bonds were conditioned for the faithful performance of the duties of his office as assessor and collector of county taxes. The Farmers & Merchants National Bank of Nocona was selected as county depository, as provided in Chapter 2, Title 47, of the Revised Statutes, beginning with Article 2544 of that chapter, Vernon's Ann.Civ.St. art. 2544 et seq.; and the bonds given by the bank, as such depository, as provided in Article 2547, were "conditioned for the faithful performance of all the duties and obligations devolving by law upon such depository, and for the payment upon presentation of all checks drawn upon said depository by the County Treasurer of the county, and that said county funds shall be faithfully kept by said depository and accounted for according to law."

By Subdivisions 1 and 2 of Article 7261, the tax collector is required at the end of each month to make reports to the commissioners' court of all tax collections made for the county, and the county clerk is required to examine the reports; certify to their correctness as regards names, dates and amounts, and to file the same with the commissioners' court.

By Subdivision 3, it is also made the duty of the tax collector to immediately pay over to the county treasurer all taxes collected for the county during the month, after reserving his commission for collecting the same, and take receipts therefor and file with the county clerk.

By Subdivision 4, the tax collector is required to appear before the court and

make a summarized statement, showing the disposition of all moneys, both State and County, collected by him during the previous three months, and also show that all taxes paid the county had been paid over promptly to the county treasurer.

By Subdivision 5, the commissioners' court is required to examine the report, and if found correct in every particular, to enter an order approving the same.

By Article 1709, the county treasurer is required to receive all moneys belonging to the county, from whatever source they may be derived, and pay and apply the same as required by law, in such a manner as the commissioners' court of his county may require and direct; and by Article 2549, to deposit the same with the county depository.

Article 2554 reads as follows: "It shall be the duty of the county treasurer, upon the presentation to him of any warrant drawn by the proper authority, if there shall be money enough in the depository belonging to the funds upon which said warrant is drawn and out of which the same is payable, to draw his check as county treasurer upon the county depository in favor of the legal holder of said warrant, and to take up said warrant and to charge same to the fund upon which it is drawn. No county treasurer shall draw any check upon the funds with said depository, unless there is sufficient money belonging to the fund upon which said warrant is drawn to pay the same. No money belonging to said county shall be paid by said depository, except upon the check of the county treasurer. It shall be the duty of such depository to make a detailed statement to the commissioners court at each regular term of said court, showing the daily balances of the preceding quarter. In case any bonds, coupons or other indebtedness of any county, by the terms thereof, are payable at any particular place other than the treasury of the county, nothing herein contained shall prevent the commissioners court of any such county from causing the treasurer to place a sufficient sum at the place where such debts shall be payable at the time and place of their maturity."

By Article 7249a, Vernon's Ann.Civ.St., it is provided that on Monday of each week, the county tax collector shall pay over to the county treasurer 90% of all taxes collected by the County during the preceding week.

Article 7250 reads: "Except as to compensation due such tax collector as shown by his approved reports, tax money deposited in county depositories shall be paid by such depositories only to treasurers entitled to receive the same, on checks drawn by such tax collector in favor of such treasurer."

On the 26th of January, 1935, in Cause No. 8713, in the District Court of Montague County, Texas, which is not the case now before us on appeal, Montague County, for its own use and for the use and benefit of more than 100 of the trustees of different road districts of the County, recovered a judgment against the Fidelity & Deposit Company of Maryland, as surety on the county tax collector's bond of W. E. Reynolds, for sums aggregating $8,050, and court costs, of which sum $7,397.48 represented taxes for which said Reynolds had failed to account. Said judgment was paid off and discharged by the surety on January 26th, 1935, the amount paid being $8,093.45.

That suit was against W. E. Reynolds, as tax collector, and the said surety on his bonds, but on motion of the plaintiff, Montague County, W. E. Reynolds was dismissed from the cause, and therefore no judgment was rendered against him. And the amount so paid on said judgment was prorated between the county and the several road districts represented by it in the suit.

After payment of said judgment by it, the said surety, Fidelity & Deposit Company of Maryland, filed suit in the Federal District Court for the Northern District of Texas, in Cause No. 325, in Equity, against W. E. Reynolds and the First National Bank of Bowie, Texas, and on December 14th, 1935, recovered judgment against both defendants for the sum of $2,855.13, which was paid off by the defendant, First National Bank of Bowie, on March 7th, 1936. In the same suit the plaintiff, Fidelity & Deposit Company of Maryland, as plaintiff, recovered an additional judgment against W. E. Reynolds, alone, for the sum of $5,238.32, which has never been paid.

The Fidelity & Deposit Company of Maryland instituted another suit in the District Court of Montague County, against the First National Bank of Saint Jo, Texas, and recovered a judgment against that defendant for the sum of $524.44, which was fully paid off and discharged on April 15th, 1936, the same day of its rendition.

The two suits last mentioned were instituted for the purpose of reimbursement, in part, or funds theretofore paid out by the surety company on the judgment rendered in Cause No. 8713, in the District Court of Montague County, under the doctrine of subrogation to the right of the county to such recovery.

The aggregate of the amounts so recovered in those two suits was $3,379.57, which, deducted from the $8,093.45 paid on the judgment rendered against it in the first suit, above mentioned, left a balance of $4,713.88.

The suit now before us was instituted by the Fidelity & Deposit Company of Maryland against the Farmers & Merchants National Bank of Nocona, the county depository of Montague County, to recover that balance of $4,713.88, under the equity doctrine of subrogation.

After crediting the defendant with said balance, it still owes the county for unauthorized withdrawals from deposits in favor of the county, some $15,656.27.

It is alleged in this suit that the county had the right to recover of the depository the amount still owing, and that the plaintiff, under the principles of equity, is subrogated to the same rights for the purpose of recovering $4,713.88, its net loss after collection of the two judgments in its favor, shown above.

Upon a trial of the case, judgment was rendered in favor of the defendant, from which the plaintiff has appealed, and the only question to be determined here is as to plaintiff's alleged right of subrogation.

■ The collections made by the tax collector for the county belonged to the county and were held by the defendant depository as its trustee and agent. If plaintiff had paid to the county the balance of the total amount for which the defendant depository is still accountable, under its obligation as county depository, then according to the well settled rule of decisions, it would have the right to recover of the defendant the amount it still owes the county, under the equity doctrine of subrogation. Rev.Civ.St. Art. 2549 (Vernon's Ann.Civ. St. art. 2549), and art. 7250; State of Texas v. Middleton's Sureties, 57 Tex. 185; Arbuckle v. State, 81 Tex. 191, 16 S.W. 876; Watson v. El Paso County, Tex.Civ. App., 202 S.W. 126; Austin v. Kiser, Tex. Civ.App., 277 S.W. 411; Kiser v. Austin, Tex.Com.App., 286 S.W. 1082; Leather Manufacturers' National Bank v. Mer-

chants' Bank, 128 U.S. 26, 9 S.Ct. 3, 32 L. Ed. 342; 39 Tex.Jur., p. 759; Skipwith v. Hurt, 94 Tex. 322, 60 S.W. 423; United States Fidelity & Guaranty Co. v. Adoue & Lobit, 104 Tex. 379, 137 S.W. 648, 138 S.W. 383, 37 L.R.A.,N.S., 409, Ann.Cas. 1914B, 667; 60 C.J. pp. 714, 728, 740, 763.

■ But we have reached the conclusion that plaintiff is not in position to claim the right of subrogation unless and until it has paid to the county the amount still owing to it by the defendant as its county depository, because it is equally as well settled by the authorities that in order to successfully assert the right of subrogation, it is incumbent upon the claimant therefor to first pay to the creditor the full amount of the debt still owing by the defendant sought to be charged therewith. And since plaintiff in this suit has not paid to the county the balance still owing to it by the defendant depository, or even any part of it, the trial court did not err in denying the right of subrogation asserted and refusing plaintiff the relief it sought.

39 Tex.Jur., par. 8, p. 761, reads: "It is a general rule that a person is not entitled to be subrogated to the rights or securities of a creditor until the creditor's claim against the debtor has been satisfied or paid in full. The reason given for this rule is that subrogation is an equitable right and will not be allowed to the prejudice of the creditor; until the entire debt has been paid, there can be no interference with the creditor's rights or securities which might prejudice or embarrass him in collecting the residue of his demand. Thus where land is conveyed subject to a mortgage, the vendor is in the position of a surety for the debt to be paid out of the land; and before he can be subrogated to the rights of the mortgagee to sue, the vendor must have paid the entire debt, and not merely the interest on the debt secured by the mortgage."

That announcement is amply sustained by decisions there cited, including Fievel v. Zuber, 67 Tex. 275, 3 S.W. 273; Texas & St. L. R. Co. v. McCaughey, 62 Tex. 271; Cason v. Connor, 83 Tex. 26, 18 S.W. 668. To the same effect are the following authorities: 25 R.C.L., par. 6, p. 1318; Campbell v. Jones, Tex.Civ.App., 230 S.W. 710; Knaffl v. Knoxville Banking & Trust Co., 133 Tenn. 655, 182 S.W. 232, Ann.Cas. 1917C, 1181; Corinth State Bank v. First Nat. Bank, 217 Ala. 632, 117 So. 216; United States v. National Surety Co., 254

U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143; McClure's Ex'r v. King, 126 Ky. 675, 104 S. W. 711; National Surety Co. v. Salt Lake County, 8 Cir., 5 F.2d 34. See also many other decisions announcing the same rule cited in note in 32 A.L.R. p. 568.

We are of the further opinion that under the record in this case, the authorities cited above conclusively refute the argument advanced in appellant's briefs, that it would have the right of subrogation for the amount sued for out of the larger amount due the county by the depository; especially so since the county was not a party to this suit, and therefore neither it nor the depository would be bound by a determination of the amount so owing. The authorities cited, such as 60 C.J. 721; 14 R.C.L., p. 1404; 95 A.L.R. 269—to the effect that no one but the creditor can complain of such a pro tanto subrogation—are not necessarily in conflict with the decisions noted above, under the facts of those cases, which it is unnecessary to point out.

By reason of the conclusion expressed above, that appellant could not invoke the right of subrogation claimed without payment of the debts owing the county by the depository, and for which subrogation was sought, the judgment of the trial court is affirmed without a determination of the merits of other assignments of error presented, because unnecessary.

### On Motion for Rehearing.

■ The obligation of the defendant, as County Depository, and its liability as such, has no bearing upon plaintiff's asserted right of subrogation against the depository for wrongful participation with W. E. Reynolds, the Tax Collector, in failing to account to Montague County for taxes collected by him and due the County. The asserted right of subrogation, if any, is to be determined solely by whether or not the Tax Collector breached his bond to account to the County for the moneys received by him. Whether or not the county depository breached its obligation to the County, under its contract with the County, is a different question, and that contract is not involved in plaintiff's suit for subrogation.

An attempt is made to show that the unauthorized withdrawals from deposits in favor of the County, amounting to $15,-656.27, as pointed out in our original opinion, did not represent the amount of net indebtedness of the Tax Collector to the County, but that all of that sum, with the exception of the amount already paid by the plaintiff as surety, had been paid over to the county.

In order to prove that point, numerous figures from the auditor's report are quoted, with calculations therefrom. The record shows that the Auditor was employed by the plaintiff to go through the books and records of the Tax Collector's official acts, and was introduced as its witness. His reports and testimony are very much involved. Especially so since, according to his testimony, all of the collections made by the Tax Collector were deposited with the depository in a lump sum, without any attempt to separate the taxes due the County from those due the State, etc. Manifestly, that condition prompted the employment of the Auditor to audit the books and give a summary of what he found. And the following appears in the Statement of Facts:

Question to the Auditor: "What was the total debits not payable to treasurers, the debits on account of checks not payable to treasurers, during the two years, 1933 and 1934? A. $15,656.27. Mr. Hughston (counsel for the plaintiff): It is stipulated in open court that the items shown in paragraph 5 of plaintiff's first amended original petition as being on account of checks of payments not covering the Tax Collector's compensation 'as shown by his approved reports', or disbursements due treasurers entitled to receive the same, are the ones involved in the totals about which the Auditor has just testified, the grand total thereof being $15,656.27."

■ And since that was the amount claimed in the petition, as still owing by the Tax Collector to the County, over and above the $8,050 plaintiff had already paid on the judgment against it, we believe it manifest that plaintiff is in no position to now assert a contention contrary thereto.

[6] Hence, authorities cited in support of the contention that plaintiff would not be required to pay the County the amount of the unpaid indebtedness owing by the Tax Collector, if the County had already received the excess, over and above the amount for which subrogation was claimed, because no further loss was sustained by the creditor; such as, City Nat. Bank v. Gustavus, Tex.Com.App., 106 S.W.2d 262; Cline-Clark Co. v. State Trust & Savings Bank of Dallas, Tex.Civ.App., 81

S.W.2d 541; have no application here. Nor is there merit in the further contention that the judgment recovered against it for the $8,050 operated as an estoppel against the County, on the theory of res adjudicata to now claim the amount of such unpaid balance, since the judgment in that case, paid off by the plaintiff, was the judgment rendered against it after Reynolds had been dismissed from the suit; nor was either Reynolds or the County made a party to this suit.

And since, according to plaintiff's own pleadings and the undisputed proof, Reynolds still owes the County the amount mentioned above, payment thereof would be a condition precedent to plaintiff's right of subrogation, asserted in its pleadings, under the authorities cited in our original opinion. The provisions of Article 2547, subd. (c), giving the sureties on the County Depositor's bond for losses sustained through the Depository, the right of subrogation to the County, are not applicable here.

■ Appellee cites Hatcher v. State, 125 Tex. 84, 81 S.W.2d 499, 98 A.L.R. 1213, in support of its plea of the two years statute of limitation (Vernon's Ann. Civ.St. art. 5526). That was a suit by the trustees of a school district against the State Treasurer and the sureties on his official bond, conditioned for the faithful performance of the duties of his office. The cause of action alleged was loss of funds through the negligent failure of the treasurer to collect a certified check and bank draft which had been remitted to him in his official capacity, to pay off certain bonds issued by the several school districts and owned by the permanent school funds. The court held that the suit was barred by the two years statute of limitation. There was a review of authorities on the point, followed with these conclusions [page 504]:

" * * * Here the cause of action does not arise out of and is not dependent upon the official bond. If the state treasurer owed defendants in error a duty for the breach of which a cause of action would lie, the law imposed the duty, and the duty rested upon him regardless of the bond. The obligation sought to be enforced, if it exists, arises out of a breach of official duty, not out of the bond. There is no statement in the bond of the state treasurer of the conditions upon which recovery may be had, and there is no promise in the bond to pay in accordance with such conditions. The bond, which is phrased in the same general terms as those contained in the statute, merely affords security for the faithful performance of the official duties. It seems clearly apparent, therefore, that the action is not founded upon the bond.

"Nor is the action evidenced by the bond. The bond contains no statement of what the duties of the treasurer are, and no promise that he will make payment of any particular funds or amount to any certain person. The duties of the state treasurer are found in the statutes. There is no evidence, not even a recital, of them in the bond. Proof of the existence of a duty to defendants in error, of the breach of that duty, and of damages suffered by the breach, must be made by evidence outside of the bond.

"As to the surety, the bond but evidences its promise to stand surety for the principal. Both the existence and the evidence of a cause of action against the surety must be found in the existence and evidence of a cause of action against the principal. If there can be no recovery against the principal, there can be no recovery against the surety. The bond is but incidental to the official obligation, in the same way that a mortgage is incidental to the debt which it secures. 'It is well settled in this state that a mortgage is so completely an incident of the debt which it is given to secure that, if the debt is barred by the statute of limitations, the creditor is without remedy under his mortgage.' State v. Glenn, 118 Tex. 334, 342, 13 S.W.2d 337, 15 S.W.2d 1028."

In plaintiff's first amended petition, on which the case was tried, the items and dates of payment which made up the $15,656.27, for which subrogation is sought, are specifically set out. The respective dates when those different items accrued began with February 4th, 1933, and ended with September 8th, 1934. The record shows that Reynolds resigned from office about the latter date. This suit was instituted on the 8th day of October, 1936, which was more than two years after the County's cause of action for all of those items charged accrued, and since the bond of the Tax Collector was for the faithful performance of the duties of his office, substantially the same as the bond of the State Treasurer, we hold that plaintiff's cause of action here asserted was barred by the statute of limitation of two years, at

all events, in accordance with the decision of the Commission of Appeals, last cited. See also Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 77 A.L.R. 663.

Accordingly, appellant's motion for rehearing is overruled.