## NATIONAL SURETY CORPORATION v. CHEROKEE COUNTY BANK, CENTRE, ALA.

Civ. A. No. 467.

District Court, N. D. Alabama, Middle Division.

Sept. 18, 1944.

Lusk & Burns, of Gadsden, Ala., and Harry S. McCowen, of Atlanta, Ga., for plaintiff.

Reed & Reed, of Centre, Ala., and Martin, Turner & McWhorter, of Birmingham, Ala., for defendant.

MULLINS, District Judge.

This matter is submitted upon the defendant's motion for a summary judgment.

The facts which plaintiff alleges to support its right to maintain this action are set out in the complaint and may be summarized as follows:

Plaintiff was surety on the official bond of Joe S. Daniel as Tax Collector of Cherokee County, Alabama, for the term beginning October 1, 1939, and ending September 30, 1943; the penalty of such bond being $15,000. In May, 1943, the Attorney General of Alabama, acting for the State, Cherokee County, the Board of Education of such county and the Town of Centre, demanded of plaintiff and plaintiff paid to the Attorney General the full penalty of the bond, "in full and complete payment and settlement of all its liability under said bond." A condition of such payment, expressed in a so-called "agreement and receipt" executed by the Attorney General, was that the funds here sued for (which it is alleged the Tax Collector at one time or another during his term of office had had on deposit with defendant) "were paid through and by said payment, and that plaintiff was entitled to all subrogation rights on account of and in any way respecting" such funds. Each of the alleged public bodies had received its legal share of the $15,000 paid by plaintiff.

Two specific claims or transactions are set out in the complaint. As to the first claim of $5485.28, it is averred that the tax collector, Joe S. Daniel, withdrew $5950 from his official account in defendant bank and deposited it in his official account in his other official depository, Farmers & Merchants Bank, Centre, Alabama. It is then averred, in effect, that the said tax collector, with the knowledge of the defendant, used a portion of these official funds to pay the defendant the sum of $5485.28 which was due it on the personal indebtedness of the said Joe S. Daniel and certain of his friends.

As the basis of the second claim, it is averred that the said Joe S. Daniel deposited the sum of $2075.43 in the defendant bank to the credit of his mother, Mrs. N. C. Daniel; that said deposit was comprised of a large number of checks which the said Joe S. Daniel had received in his capacity of tax collector of said county, and all of said checks represented taxes collected by him in such capacity. The plaintiff further avers that the defendant bank knew that all of the funds represented by such deposit were in the custody of the said Daniel in his capacity as tax collector, but nevertheless received and credited said deposit to the account of his mother.

The complaint is silent as to the total amount of the defalcation of the tax collector, but the certified report of the Examiner of Accounts of the State of Ala-

bama filed in support of this motion for summary judgment, discloses that the total amount of such defalcation was $19,026.79, or $4,026.79 in excess of the penalty of the bond. The answer filed by plaintiff in the interpleader suit filed by defendant in' the Circuit Court of Cherokee County, in Equity, against plaintiff and others, a duly certified copy of which is attached to the motion, admits that the total amount of such tax collector's defalcation was $19,-026.79 and that after the payment of $15,000 made by plaintiff there remained unpaid $4,026.79. The certified copy of the complaint filed in the Circuit Court of Cherokee County, in Equity, in the case of ·State of Alabama for the use of itself and its agencies against Joe S. Daniel, discloses also that the State seeks judgment for such unpaid balance of $4,026.79.

Plaintiff avers that it has made demand· upon the defendant for payment of the amounts sued for, but that payment has been refused.

The plaintiff relies for recovery on the doctrine of equitable subrogation. In oral argument the plaintiff stated that it did not rely on conventional subrogation by virtue of the agreement and receipt executed by the Attorney General of the State of Alabama at the time the plaintiff paid the amount of its bond to the State. The substance of this agreement and receipt is set out in the complaint. It appears that there was no consideration for the same, as the plaintiff only paid the face amount of its bond—the amount that it was obligated to pay under its contract as surety. Furthermore, an attempted assignment of part of the securities of the State and its agencies, their claim not having been fully satisfied, would · constitute an unauthorized remission of an obligation or liability due the State and its subdivisions. Constitution of Alabama 1901, Section 100.

It is well settled in Alabama that the right of equitable subrogation does not arise until the debt due the creditor has been satisfied in full. Atherton v. Tesch, 202 Ala. 448, 80 So. 832; Pickens County v. Johnson, 227 Ala. 190, 149 So. 252; Cross v. Bank of Ensley et al., 205 Ala. 274, 87 So. 843; Corinth State Bank v. First National Bank of Florence, 217 Ala. 632, 117 So. 216; Bradley v. Bentley, 231 Ala. 28, 163 So. 351. " * * * Subrogation cannot be decreed, in any case, un-less the debt—the whole debt—has been paid." Pickens County v. Johnson, supra [227 Ala. 190, 149 So. 256].

"The reason for the rule is that, so long· as the party, whose rights are claimed for use in protecting the party who would invoke the doctrine, remains unsatisfied, *though in part only,* there will be no interference with his rights or securities which might, even by bare possibility, prejudice, or embarrass him in the collection of his claim." Corinth State Bank v. First National Bank of Florence, supra [217 Ala. 632, 117 So. 218]. (Emphasis supplied.)

This doctrine does not differ from the rule enunciated by the federal courts.

"A surety who has undertaken to pay the creditors of the principal, though not beyond a stated limit, may not share in the assets of the principal by reason of such payment until the debts thus partially protected have been satisfied in full. *This is the rule where the right to a dividend has its basis in the principle of equitable subrogation.* 'A surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied.' United States v. National Surety Co., 254 U.S. 73, 76, 41 S.Ct. 29, 30, 65 L.Ed. 143." (Emphasis supplied.) American Surety Co. v. Westinghouse Electric Mfg. Co., 296 U.S. 133, 137, 56 S.Ct. 9, 11, 80 L.Ed. 105.

Of course it is not necessary for the party seeking subrogation to pay the entire debt. The rule is satisfied if the obligation due the creditor is paid in full, although part of the debt may have been paid by the principal debtor, or some other person. Shaddix v. National Surety Co., 221 Ala. 268, 128 So. 220; Bradley v. Bentley, supra.

It affirmatively appears from the State audit and the other exhibits submitted that Daniel, the tax collector, was due the State of Alabama and its governmental subdivisions, a total of $19,026.79. The plaintiff paid $15,000, the full amount of its bond, thus leaving a balance due to the State of Alabama and its subdivisions of· $4,026.79. Under the rule stated to the ·effect that the creditor must be satisfied in full, it is my opinion that the plaintiff cannot maintain this action. The cause of action sued upon is still held by the State and its subdivisions. The State could maintain a suit on its own behalf and for

the benefit of the other governmental subdivisions involved on the claim now sought to be asserted for the $4,026.79 remaining unpaid. The exhibits show that the State of Alabama, Cherokee County, the town of Centre, and the Board of Education, each has an interest in this unpaid balance.

The plaintiff admits that the right of equitable subrogation does not arise under the law of Alabama, in the absence of full payment to the creditor. However, it asserts that its right to maintain the action comes within the following exception to this general rule. "The rule that the debt must be paid in full has in apparently every instance been invoked for the protection of the creditor, and never to defeat contract obligations in the interest of the debtor alone." 50 Am. Jur. p. 703, Section 28.

From an examination of the authorities upon which the above exception is based, I do not believe it applies in the present case. It seems that the exception has only been applied in cases where the creditor has been paid in full, but the party seeking subrogation has paid only a part thereof, or in instances where the creditor has acquiesced, is estopped or it clearly appears that the creditor's rights cannot in anywise be prejudiced.

The language constituting the exception now under consideration appears to have been taken from the case of Skinkle v. Huffman, et al., 52 Neb. 20, 71 N.W. 1004. That case is clearly distinguishable. There the plaintiff had paid an interest coupon of $120 on a first mortgage to protect her second mortgage. Subsequently the defendant became the purchaser of the property and as part of the purchase price assumed the first mortgage and also the second mortgage held by the plaintiff. At the time the defendant assumed payment of the first mortgage he had knowledge that the plaintiff had paid the interest coupon of $120 due on the first mortgage and that this constituted a part of the indebtedness which he assumed. The defendant subsequently paid the first mortgage with the exception of the coupon note of $120 held by the plaintiff, Mrs. Skinkle. The Court said that the debtor could not invoke the rule that the debt must be paid in full for the purpose of defeating his own contractual obligation to pay the coupon note which had been taken up by Mrs. Skinkle. However, in that case the original creditor was the Mutual Life Insurance Company and its debt had been fully paid. Therefore, the effect of the holding, in my judgment, is that the defendant could not defeat his own contractual obligation, the original creditor having been paid in full, by setting up that Mrs. Skinkle had paid only a part of the indebtedness.

The plaintiff, in asserting its right to proceed under the quoted exception, also relies upon the cases of Grantham v. Nunn, 187 N.C. 394, 121 S.E. 662; Sherman v. El Paso National Bank, Tex.Civ. App., 100 S.W.2d 402, and Standard Surety & Casualty Co. of New York v. Standard Accident Insurance Co., 8 Cir., 104 F.2d 492, 497. These cases are clearly distinguishable from the case at bar. In the Grantham case all the parties, including the creditor, were properly before the court and only the debtor appealed from the decree allowing subrogation. The creditor there took no appeal and the court said, "If a similar agreement is necessary on the part of Mrs. Bryan (the creditor), her acquiescence in his honor's judgment is tantamount to consent." [187 N.C. 394, 121 S.E. 665]

In the Sherman case the bank was allowed subrogation but it had acquired claims of all creditors with the exception of one, and that claim was by the court preferred over the bank's right of subrogation. Furthermore, the question of part payment was only involved as to property other than that included in the subrogation decree.

The case of Standard Surety & Casualty Co. of New York v. Standard Accident Insurance Co., supra, is not applicable. There the court pointed out that the creditors were not prejudiced and were deprived of nothing by the decree; that, if anything, they were being furnished additional security. That case also sets out the reason for the rule against subrogation on part payment, stating that the creditor cannot equitably be compelled to split his securities and give up control of any part until he is fully paid.

This exception to the rule was considered in Hurt v. Read et al., 5 Cir., 108 F.2d 282. In that case, however, the creditors were parties to the proceedings and the court preferred their rights over that of the subrogees. The creditors being before the court and their rights being fully protected, the court held, under such circum-

stances, that the question of part payment could not be raised.

The State of Alabama and its subdivisions not having been fully paid, it cannot successfully be claimed that there will be no interference with their rights or securities or that, by bare possibility, such rights will not be prejudiced. Under such circumstances the right of equitable subrogation cannot be maintained. Corinth State National Bank v. First National Bank of Florence, supra; Atherton v. Tesch, supra.

The case of United States Fidelity & Guaranty Co. v. Union Bank & Trust Co., et al., 6 Cir., 228 F. 448, 456, is on all-fours with the case at bar. There the surety had paid only a part of the indebtedness that was due to the county and municipality on account of the default of a court clerk. The court, in holding that the exception now being considered did not apply, declared: "It is said that only that creditor a portion of whose debt remains unpaid after the surety has paid all he is bound for can raise the objection that the surety may not be subrogated to the creditor's securities and remedies until the creditor has been paid in full and cases are cited supposed to be to this effect. These are probably all distinguishable from the general principle above stated, because the creditor had agreed to the substitution (Motley v. Harris, 1 Lea, Tenn., 577), or because there was a security common to several distinct debts, and the surety, having paid one of these debts, claimed corresponding rights in the security (Nettleton v. Ramsey [County Land & Loan Co.], 54 Minn. 395, 56 N.W. 128, 40 Am.St.Rep. 342), or because of some other analogous reason. That the city and county have not objected to the subrogation claim of the guaranty company is perhaps explained by the fact that the record shows no notice to them of any such claim. At any rate, the cause of action existing in favor of the city or of the county was a single, indivisible cause of action, even if it existed separately from the rights of individual beneficiaries, and it could not be split up into two actions, with or without the consent of the city or county.

As pointed out in the foregoing case, the county and municipality probably did not appear because they did not have notice of the proceedings. It does not appear here that the State and its subdivisions have notice of the present proceeding, but even if they had notice, I know of no authority that would hold that the State had acquiesced or that it could be estopped by not appearing in this litigation.

 The plaintiff has offered no amendments, but in its brief has suggested that it would like to amend by bringing in the various governmental agencies that are interested with the exception of the State of Alabama. It affirmatively appears from the exhibits submitted on the motion for summary judgment, the correctness of said exhibits not being questioned, that the State of Alabama has not been paid in full. Under the 11th Amendment to the Federal Constitution, this court has no authority on its own motion or by allowing an amendment to make the State of Alabama a party to this proceeding. This being true, nothing could be accomplished by bringing in the other interested parties.

Proper decree will be entered granting defendant's motion for summary judgment.