## AMERICAN INDEMNITY CO. v. RED RIVER NAT. BANK IN CLARKS-VILLE.

### No. 5332.

Court of Civil Appeals of Texas.
Texarkana.

Aug. 3, 1939.

Rehearing Denied Sept. 28, 1939.

Albert B. Hall and Richard L. Hughston, both of Dallas, for plaintiff in error.

Wm. Hodges, of Texarkana, and Sam Hocker, of Clarksville, for defendant in error.

JOHNSON, Chief Justice.

Raymond L. Medford. was elected and served as tax collector for Red River county for the years 1927, 1928, 1929, and 1930. He retired at the expiration of the second term December 31, 1930, and on February 13, 1931, made his final settlement with the state and with Red River county. On December 31, 1932, suit was filed by Red River county in the District Court of Dallas county against Medford and the American Indemnity Company as surety on his official bonds, alleging that Medford had failed to account for all funds due the county which had come into his hands as tax collector during the last three·years of his office, namely, 1928, 1929, and 1930. The case was transferred upon plea of privilege to the District Court of Red River County and was given No. 17110 on the docket of that court. June 4, 1934, judgment was rendered in favor of the county against Medford and said surety on his official bonds for certain specific items of indebtedness described in the judgment and interest on each item, totaling the sum of $9,404.97 principal and $2,234.26 interest. The judgment was affirmed by the Court of Civil Appeals at Eastland, opinion reported in Medford v. Red River County, 84 S.W.2d 345. By agreement of all parties a second·motion for rehearing was filed in the Court of Civil Appeals and the judgment was there reformed and entered for $7,962.52 with interest. On July 19, 1935, the American Indemnity Company paid the judgment, interest and costs, aggregating $8,844.49.

The Red River National Bank of Clarksville and the successor to its assets and liabilities, the Red River National Bank in Clarksville, was the ·duly designated and qualified depository for Red River county during the four years Medford was tax collector. On October 25 and December 16, 1935, the American Indemnity Company addressed letters to the Red River National Bank in Clarksville in substance contending that the indebtedness which the county had recovered against said company and Medford had been by Medford deposited in said bank as county depository and was evidenced by his unlawful withdrawals, or by credits which are or should be remaining in the bank, and for the payment of which the bank as well as Medford and said surety on his official bonds were liable to the county; that said indemnity company as surety on Medford's bond having paid said indebtedness was subrogated to the rights and remedies of the county against the bank as depository and upon that ground said company demanded that the bank pay the $8,844.49 loss which said company had sustained as Medford's surety in satisfying said judgment. The bank refused the demand. On December 19, 1935, the present suit was filed by the American Indemnity Company as plaintiff, against Red River National Bank in Clarksville as defendant, seeking to recover against the bank as county depository the loss which said company had sustained in satisfying said judgment, principal, interest and court costs.

Plaintiff's petition in substance alleges that covering the four years that Medford served as tax collector plaintiff was surety on his official bonds, and that covering the same period of time the Red River National Bank of Clarksville, or the defendant, its successor, which assumed its liabilities to depositors, was the duly selected and acting depository for Red River county, and obligated to faithfully perform all the duties imposed by law upon county depositories. That during said time taxes, including motor vehicle registration fees, had been deposited in said depository and by it credited to the account of Medford as tax collector of said county. That against said account "the depository undertook to make charges aggregating at least

$8,844.49 on account of checks or payments not covering the tax collector's compensation as shown by his approved reports or disbursements to treasurers entitled to receive same." That "R. L. Medford as tax collector received on account of taxes and delivered to the depository and it received, the sum of, to-wit, $8,844.49, for which it knowing what the same represented gave credit, for which he failed to further account, and which it has on demand failed and refused to pay." That during his terms of office Medford collected taxes and automobile license fees "aggregating more than one million dollars" which were deposited with the defendant to the credit of Medford as tax collector; that against those deposits defendant honored and charged many checks and orders for authorized withdrawals; that the difference between the total of such deposits, including depository interest, and the total of such authorized withdrawals "was the sum of at least $8,844.49, which represents a credit in the depository which has not been withdrawn to cover tax collector's compensation as shown by his approved reports or disbursements to treasurers entitled to receive same, on account of which the defendant (depository) and Raymond L. Medford, jointly and severally, were indebted to Red River County, Texas, until such indebtedness to it was discharged by the plaintiff in cause No. 17110." That Red River county had recovered judgment against Medford and against plaintiff as surety on his official bonds, "for the sum of $7,962.52, with interest thereon at the rate of 6% per annum from the 4th day of June, 1934, until paid and all costs of suit" whereby and on account of which plaintiff became liable to pay and on June 13, 1935, did pay the sum of $8,844.49, "and that plaintiff thereupon became subrogated to any and all priorities, remedies and rights which Red River County, Texas, theretofore had against the defendant and any other party or parties liable to it in the premises."

Defendant answered by general demurrer, special exceptions, general and special denial. Defendant specially pleaded that it had fully settled and paid over all the balance due the state, county, and other municipalities by reason of having received deposits from Medford as tax collector and had fully accounted for according to law all tax money which had theretofore been deposited with it as a depository of Red River county. It further alleged that all sums paid out by it on account of such deposits were paid on checks drawn on it by Medford as tax collector and payable to parties who were lawfully entitled to receive such payments. Defendant pleaded the two and four year statutes of limitation. In addition it further pleaded waiver, laches, unreasonable delay, and election of remedy on the part of Red River county, and estoppel.

On trial of the case before the court without a jury, judgment was rendered that plaintiff, American Indemnity Company, take nothing by reason of its suit. From this judgment plaintiff has by writ of error perfected its appeal to this court. The parties will be referred to as they were aligned in the trial court, plaintiff and defendant.

By proper assignments of error and propositions plaintiff contends that by pleadings and uncontradicted evidence it has conclusively established its right to recover against the defendant.

Assuming without deciding the questions as to the sufficiency of the pleadings and of plaintiff's alleged right of subrogation, the record before us shows that the evidence introduced upon the trial of the present case was insufficient to conclusively, or as a matter of law, show that defendant bank was indebted or liable to Red River county for the particular items of indebtedness which said county recovered in cause No. 17110 against Medford and plaintiff as surety on Medford's official bonds, the payment of which items by plaintiff to the county constitutes the basis of plaintiff's claim of subrogation. The judgment in cause No. 17110 introduced in evidence by plaintiff show that the particular items of indebtedness recovered by the county against Medford and plaintiff as his surety were:

"(a) Excess fees for the year 1928 .................. $1,947.05
Overcharge fees for the year 1928 ........... 380.44

Total .............. $2,354.49
(b) Excess fees for the year 1929 .................. $1,357.12
Overcharge fees for the year 1929 ........... 695.64

Total .............. $2,052.76

(c) Excess fees for the year 1930 ................ $2,146.90
Overcharge fees for the year 1930 ........... 718.92

Total .............. $2,865.82

(d) Amount collected on motor vehicles for 1930... $1,780.96
And the further sum of.. 22.30

Total .............. $1,803.26

(e) Depository interest unaccounted for for the year 1930 ................ $ 331.64."

■ The defendant bank was not a party to cause No. 17110. It was not bound by the facts proven or judgment rendered in that cause. The burden was upon plaintiff in the present suit to establish in point of fact a cause of action in favor of the county against the defendant for the particular items of indebtedness described in said judgment.

In its effort to show liability on the part of the bank to the county plaintiff introduced in evidence a stipulation of the parties agreeing that the amount of ad valorem taxes collected by Medford during his four years in office is shown by his regular monthly reports filed during said years. Plaintiff introduced parts of a statement—the remainder of which was introduced by defendant—prepared by defendant bank which shows the total credits to and withdrawals from Medford's account as tax collector for each of his four years in office. The statement reads as follows:

served as tax collector, and that since 1931 witness had worked as deputy tax collector. That witness had (time not shown) at the request of the Commissioners' Court prepared a statement of Medford's tax collections "as shown by his monthly reports" on file in the office of the county clerk. That said statement so prepared by the witness constituted a recapitulation of what Medford's monthly reports showed as to his tax collections, but did not include his collections for motor vehicle registration fees. The statement is referred to as plaintiff's Exhibit B. The witness testified that the statement showed the amount of taxes collected during the years 1928, 1929, and 1930, for the state, not including motor vehicle registration fees, totaled $296,073.87; and that the amount collected during said three years for the county, levee districts, school districts, and road district and cities for which Medford collected taxes, but not including motor vehicle registration fees, totaled $659,611.01. The witness further testified that in preparing said statement he calculated the commissions that Medford should have taken credit for and that he found "some errors in the way that Medford had calculated the commissions." That witness had prepared a statement "showing the amount of commissions for which Medford took credit and the amount for which he should have taken credits." Said statement so prepared by the witness showing the net difference in commissions resulting from the way the commissions were calculated by Medford and the way the commissions were calculated by the wit-

"R. L. Medford, Tax Collector, Account
In Account with
The Red River National Bank
Clarksville, Texas.

| Debits | | Credits | |
|---|---|---|---|
| 1927 | 286,460.42 | 1927 | 337,500.23 |
| 1928 | 375,797.91 | 1928 | 380,361.52 |
| 1929 | 372,223.49 | 1929 | 345,344.19 |
| | | Highway A/c | 4,043.87 |
| Highway A/c | 3,538.03 | 1930 And up to Feb. 13, 1931 | 370,901.95 |
| 1930 And up to Feb. 13, 1931, | 399,626.07 | Highway A/c | 96.13 |
| Highway A/c | 601.97 | | |
| Total Debits | 1,438,247.89 | Total Credits | 1,438,247.89 |
| | | Total Cr to Tax Coll A/c | 1,434,107.89 |
| | | Highway A/c | 4,140.00." |

J. L. Allston, witness for plaintiff, testified in substance that he had worked in the office of the county auditor of Red River county during the four years Medford

ness is referred to as plaintiff's Exhibit C. Plaintiff's Exhibits B and C do not appear in the statement of facts. The statement of facts at this point reads:

"Plaintiff's Exhibit B and C involving 11 pages, are condensed as follows, to-wit:

" 'Plaintiff thereupon introduced statements, prepared by J. L. Allston, relating to taxes, exclusive of fees under the motor vehicle registration statute, showing commissions charged by R. L. Medford from January 1st, 1928 to December 31st, 1930, and collections and disbursements of R. L. Medford, Tax Collector, from January 1st, 1927, to December 31st, 1930, which showed that Medford charged and received for excessive or overcharged commissions, $379.-88, $695.54 and $717.95, for the years 1928, 1929 and 1930 respectively, to which he was not entitled; and that he collected and disbursed on account of State taxes for the year 1927, $85,609.19; for the year 1928, $108,293.26; for the year 1929, $93,157.09; and for the year 1930, $94,623.53, including $2352.37, $3185.45, $3,039.01 and $2,-455.49 received by him on account of commissions for those years respectively; and that he collected and disbursed on account of County, School, Road, City and Levy (Levee District), taxes for the year 1927, $192,753.63; for the year 1928, $231,984.80; for the year 1929, $209,846.09; and for the year 1930, $217,780.12, including $3750.72, $4412.94, $4881.10, and $4265.14 received by him on account of commissions for those years respectively.' "

Wayne Rockett, witness for plaintiff, testified that he is now assistant in the county auditor's office of Ellis county, that he performed services for Gordon-Wolf Company in an audit which that company made of Medford's office as tax collector for the years 1927, 1928, 1929, and 1930, that the work done in such audit by the witness was to verify the reports which Medford made of his collections of motor vehicle registration fees, including chauffeurs' and drivers' license; that Medford's gross collections for such fees for the year 1928 amounted to $48,249.63; for the year 1929, $49,217.-76; for 1930, $38,773.56; a total of $136,-240.95 for said three years; that all said collections were shown by Medford's weekly reports made to the county as provided by statute (Vernon's Ann.Civ.Statutes, Articles 6691, 6675a—10), except the sum of $1,802.41 due the county for which witness found no reports made to the county; that said $1,802.41 for which no reports were found consisted of Medford's collections of motor vehicle registration fees for the five weeks ending March 29, May 17, July 5, August 9, and September 27, 1930;

the amount of such registration fees collected by Medford for the five weeks was ascertained by the witness from copies of receipts in Medford's office; that the books of the county treasurer did not show that said $1,802.41 had been paid by Medford to the county treasurer; that witness did not know whether the said $1,802.41 was ever deposited in the county depository or not; that he did not know whether the county treasurer's books were correctly kept or not.

It was agreed, upon trial of the case, that the depository credited to the account of Medford as tax collector depository interest of which $331.64 was not accounted for to Red River county by Medford; and "that Medford as tax collector made excess fee reports for the years 1928, 1929, and 1930, but that in such reports he failed to account to the county for excess fees in the following sums: 1928, $1,974.04; 1929, $1357.12; 1930, $2,146.96; total $5,478.-07."

Frank Smyre, witness for plaintiff, testified that he had been county clerk of Red River county since 1933; that the minutes of the commissioners' court did not show the record of any order approving or disapproving any of Medford's reports as tax collector; that if the commissioners' court of Red River county ever approved a report of the tax collector, witness did not know of it; that it had been the habit of the commissioners' court during the time that witness had been county clerk "just to pass all of those reports without any examination or checking." Witness Allston was recalled and testified that during the time he worked in the county auditor's office of Red River county from 1927 to 1931, inclusive, the commissioners' court never in fact made any investigation of or approved the reports of the tax collector.

Raymond L. Medford, witness for plaintiff, testified by deposition, on direct examination, that all taxes, including motor vehicle registration fees, collected by him as tax collector of Red River county were deposited in the county depository to his official credit; that all deposits made by him in the depository in 1931 represented taxes and motor vehicle registration fees theretofore collected by him; that he made no deposits in the depository for credit to him in any account as tax collector which did not represent taxes and motor vehicle registration fees; that he accounted for all taxes, except motor vehicle registration fees, by

paying the net balances as shown by his monthly reports; that he accounted to the State Highway Department for all motor vehicle registration fees collected and due that department by his weekly reports; that he made payments to treasurers other than those shown by the reports mentioned, which other payments were for excess fees and motor vehicle registration fees; that such payments for excess fees were made annually to the county treasurer and such payments for such motor vehicle registration fees were made weekly to the county treasurer and state treasurer; that such payments were to comply with the state statute regarding such remittances. On cross examination by the defendant, Medford testified that all the taxes, including motor vehicle registration fees, deposited by him in the depository were subsequently paid out by him to the treasurer of the state, county, and districts entitled to receive same and that such payments were made by checks drawn by him as tax collector upon the depository and payable to said treasurers; that his deposits in the depository included his compensations and fees; that at the end of each month during his term of office he paid over to the different treasurers entitled to receive same all the money collected by him as tax collector then due such treasurers. That he never as tax collector drew any checks on the depository payable to any parties other than such treasurers entitled to receive same, except his commissions, fees and office expenses; that he turned over to the different funds of the county all that was due them; that at the end of his last term of office he paid over to the county treasurer the entire balance of all tax money theretofore collected by him for Red River county during his terms of office; that at the end of his last term of office he paid over to the treasurer of the state, county, and various districts all the money which he had theretofore deposited in the depository, except his fees and commissions allowed by law, and office expenses; that he made such payments by checks drawn by him as tax collector on the depository and payable to said treasurers; that he made very few of his reports himself, but that to the best of his knowledge they were correct.

■ We shall first determine the issue as to alleged "overcharged commissions" (distinguishable from excess fees) claimed to have been conclusively shown by the testimony of the witness Allston who testified that in preparing the statement from Medford's monthly reports he found that such reports showed some errors in "the way" that Medford had calculated his commissions, resulting in overcharges in such commissions in the sums of $379.88 for 1928; $695.54 for 1929; $717.95 for 1930; total $1,793.37. None of Medford's reports were introduced in evidence, nor does Plaintiff's Exhibit B and Exhibit C, that is, the statement prepared by the witness Allston, above referred to, appear in the statement of facts. The witness did not testify nor does the above quoted condensation or summary of the statements prepared by the witness show, nor is there anything in the record attempting to show, in what particular or wherein "the way" Medford calculated his commissions as shown by his monthly reports was unlawful or erroneous. Upon what grounds the witness arrived at the conclusion that "the way" as shown by his monthly reports that Medford calculated his commissions was an incorrect way is not shown in the record before us. We can not say but that the statements prepared by the witness, introduced in evidence but not contained in the statement of facts before us, revealed to the trial court that the way the witness Allston calculated the commissions was not the correct way. Whether it be made to refer to an alleged greater per cent than authorized by statute to be charged for commissions for a particular item or items of taxes, or whether the same be made to refer to some mistake in figures, the question of whether the way that Medford's reports show he calculated the commissions or the way the witness Allston calculated them was the correct or incorrect way, was a matter to be determined in the first instance by the trial court. From the record before us, it can not be said that the trial court incorrectly determined that question in deciding it against plaintiff.

■ Should we be in error in our decision last above reached, then it is necessary to determine the issue as to whether the evidence conclusively shows (1) that the money representing the said alleged overcharged commissions was deposited in the depository, and if so, (2) that the depository unlawfully permitted its wrongful withdrawal by Medford. The evidence shows that Medford withdrew all the money he deposited in the depository. For the purpose of determining the issue, we shall

assume, without affirming, that the money represented by the items of alleged overcharged commissions was by Medford deposited in the depository, and that his reports show that he overcharged and withdrew as commissions the amounts testified to by Allston. The question, then, is: Does the evidence show that the depository unlawfully permitted such withdrawals? No fraud, collusion or bad faith is charged against the depository. The contention is that the evidence conclusively shows that Medford's monthly reports were not lawfully approved; and for that reason the depository's action in permitting Medford to withdraw from the depository his commissions as shown by such reports was unlawful, and for which reason was liable to the county. R.S.1925, Article 7250 provides: "Except as to compensation due such tax collector as shown by his approved reports, tax money deposited in county depositories shall be paid by such depositories only to treasurers entitled to receive the same, on checks drawn by such tax collector in favor of such treasurer."

Article 7261 provides:

"1. The tax collector shall at the end of each month make like reports to the Commissioners Court of all the collections made for the county, confirming as far as applicable and in like manner to the requirements as to the collection and report of taxes collected for the State. The County Clerk shall likewise, within two (2) days after the presentation of said report by the Collector, examine said report and stubs and certify to their correctness as regards names, dates, and amounts; for which examination and certificate he shall be paid by the Collector Fifty (50) Cents each month, which amount shall be allowed to the Collector by the Commissioners Court * * *.

"2. The Clerk shall file said report intended for the Commissioners Court, together with the tax receipt stubs, in his office for the next regular meeting of the Commissioners Court.

"3. The Tax Collector shall immediately pay over to the County Treasurer all taxes collected for the county during said month, after reserving his commissions for collecting the same, and take receipts therefor, and file with the County Clerk.

"4. At the next regular meeting of the Commissioners Court, the Tax Collector shall appear before said Court and make a summarized statement, showing the disposition of all moneys, both of the State and county, collected by him during the previous three (3) months. Said statement must show that all taxes due the State have been promptly remitted to the State Treasury at the end of each month, and all taxes due the county have been paid over promptly to the County Treasurer and shall file proper vouchers and receipts showing same.

"5. The Commissioners Court shall examine such statement and vouchers, together with an itemized report and tax receipt stubs filed each month, and shall compare the same with the tax rolls and tax receipt stubs. If found correct in every particular, and if the Tax Collector has properly accounted for all taxes collected, as provided above, the Commissioners Court shall enter an order approving said report, and the order approving same shall be recorded in the minutes.

"6. The Tax Collector shall finally adjust and settle his account with the Commissioners Court for the county taxes collected, at the same time and in the same manner as is provided in the foregoing article in his settlement with the State."

Article 1645 provides that in certain counties "there shall be biennially appointed an auditor of accounts and finances, the title of said officer to be county auditor." Article 1648 prescribes the qualifications required of such officer. Article 1649 requires that he shall take the regular oath of office and a special oath, and shall execute a bond in the sum of $5,000 conditioned for the faithful performance of his duties. Article 1651 provides: "The auditor shall have a general oversight of all the books and records of all the officers of the county, district or State, who may be authorized or required by law to receive or collect any money, funds, fees or other property for the use of, or belonging to, the county; and he shall see to the strict enforcement of the law governing county finances."

Article 1654 provides: "All reports of collections of money for the county required to be made to the commissioners court shall also be carefully examined and reported on by him. He shall at least once in each quarter check the books and examine all the reports of the tax collector, the treasurer and all other officers, in detail, verifying the footings and correctness of same, and shall stamp his approval thereon, or note any differences, errors or discrepancies. * * *"

The evidence in the present suit shows that the commissioners' court of Red River county did not examine or approve the tax collector's reports during the time that Medford held office, as provided by Article 7261. But the evidence further shows that there was a county auditor of Red River county during all the time Medford served as tax collector. Plaintiff failed to show that Medford's reports were not approved by the county auditor of Red River county. No contention is here made but that all Medford's reports were regularly examined and approved, and his approval stamped thereon, by the county auditor of Red River county as authorized and required by Article 1654. From the qualifications required of him it is apparent that an examination and approval by the county auditor of the tax collector's reports would better protect the interests of the county than would such an audit and approval by the commissioners' court, composed of men not required to be qualified in the matter of auditing reports and accounts, and that such was the purpose and intent of the statute in requiring the appointment of a person so qualified as county auditor. He is by the statute made an officer of the county, in whom is vested the authority and it is made his duty to examine and if found correct to approve the tax collector's reports and stamp his approval thereon. Hence his approval of the reports is an approval by lawfully constituted authority. It will be here noted that Article 7250 under which plaintiff seeks to hold the depository liable does not prescribe by whom the reports must be approved before the depository may permit the tax collector to withdraw his commissions "as shown by his approved reports." We do not think that a depository is liable under the provisions of Article 7250 for having permitted the tax collector to withdraw his commissions, when such depository has in good faith permitted withdrawal of only such commissions as were shown by the tax collector's reports approved by the county auditor.

■■ The next item for which plaintiff contends that the evidence conclusively shows that the depository was liable to the county is that of "excess fees," in the total sum of $5,478.07, not accounted for or included in his annual reports of excess fees to the county. The only evidence as to this item is the stipulation, above quoted, reciting: " * * * It is agreed that R. L. Medford as tax collector made excess fee reports for the years 1928, 1929, 1930, but that in such reports he failed to report to the county for excess fees the following sums: 1928—$1974.05; 1929—$1354.12; 1930—$2146.90. And that no payment was made by Medford to the county on account of such fees not included in his reports; total $5,478.07."

This evidence fails to attach any liability upon the depository to the county. Excess fees of a tax collector consist of the sum remaining in his hand after deducting from the total of all lawful fees collected by him during the year the following items: (1) His "maximum annual fees" as provided by Articles 3883 and 3883a; (2) and his deputy hire as provided by Article 3891; and (3) his office expenses as provided by Article 3899; and (4) $\frac{1}{4}$ of the remainder until such $\frac{1}{4}$ amounts to the sums specified in Article 3891 dependent upon the population of the county. What portion, if any, of the fees lawfully retained by the tax collector according to his monthly reports may become excess fees can not be ascertained until the end of the fiscal year. On January 1st of each year he is by Article 3898 required to report and to make a settlement with the county of such excess fees, and he shall pay the same "into the county treasury," Article 3891. Medford testified that he withdrew his fees from the depository each month. We have already seen that the evidence in this case does not show that the depository's permission of such withdrawal was unlawful. The fact that a portion of such fees so withdrawn monthly by Medford from the depository became excess fees for which Medford should have but failed to pay to the county at the end of the year does not show any liability upon the part of the depository. And it will be further noted that Medford filed excess fee reports for each of the years in question. It is not shown but that these report were approved. Had the testimony shown that Medford did not withdraw from the depository his fees at the end of each month, even then we do not think that liability would have attached to the depository for having permitted him to withdraw same at the end of the year in accordance with his approved annual excess fee reports.

■■ The next item upon which plaintiff contends that the evidence conclusively showed that the depository was indebted to the county was that wherein the parties agreed that the depository credited to the account of Medford as tax collector depository interest that he did not account for to the county, in the sum of $331.64.

The fact that the depository credited Medford's account as tax collector with depository interest in the sum of $331.64 more than Medford accounted for to the county would not create an indebtedness in favor of the county against the depository unless the depository was in the first instance in fact due the county the amount of depository interest which is credited to the account of Medford. There is no evidence showing what the total amount of depository interest accrued upon Medford's daily balance during any one or all of the years that he was tax collector nor is there any evidence showing the amount of depository interest for which he accounted to the county for either or all of said years. The testimony shows that Medford in his monthly reports computed and accounted to the county for depository interest due the county on his daily balances in the depository. Neither the calculations made by Medford as shown by his reports nor those made by the bank were introduced in evidence, nor is there any testimony with reference to the correctness or incorrectness of the calculations of such interest made by Medford, or by the bank. In the absence of any evidence with reference thereto we would not be authorized to say whether Medford or the bank was in error in calculating such depository interest. Nor can it be determined from the record here but that the interest in question was due one or more of the cities for which it is shown that Medford collected taxes and deposited same in the depository to his account as tax collector, and as to which he was under no legal obligation to account to the county. Hence it is not shown that the depository was in fact due the county the depository interest here in question.

■ The next item for which it is contended that the evidence conclusively shows that the depository is liable to the county is that of motor vehicle registration fees. Plaintiff's witness Wayne Rockett testified in substance that he found in Medford's office copies of receipts evidencing collections of motor vehicle registration fees for the weeks ending March 29, 1930, $496.51; May 17th, $617.21; July 5th, $403.92; August 9th, $193.74; and September 27th, $91.03; total $1,802.41; for which he found no copies of reports on file in the tax collector's office, and that the county treasurer's books showed no entry of said $1,802.41 having been received by the treasurer. Witness did not know nor was there any evidence that the treasurer's books had been correctly kept. Witness further testified that he did not know, nor did his testimony show that he made any examination to determine, whether said collections were deposited in the depository or not. The record fails to show that plaintiff made any effort to ascertain whether during the weeks in question Medford's daily collections, as shown by his books and copies of receipts in his office, tallied with his daily deposits in the depository or not. Plaintiff contends that the fact that the total amount credited to Medford's account in the depository during the years 1928, 1929, and 1930, exceeded by $10,624.24 the total amount reported to the county by Medford as having been collected during those three years raises an inference that the $1,802.41 in motor vehicle registration fees claimed to have been collected and not reported by Medford during 1930, was deposited in the depository. We do not think that such an inference, if warranted, is conclusive for the reason that it is not shown but that such difference between his deposits and his disbursements during said three years represented collections made in 1927, or but that it represented collections made for one or more of the cities for which he collected. It will be further noted in this connection that during 1930 (the year in which it is claimed that Medford collected and failed to report the $1802.41 motor vehicle registration fees in question) Medford's disbursements exceeded his deposits by $29,219.96, which according to plaintiff's reasoning would raise an inference that he did not deposit the $1,802.41 in question.

■ Plaintiff further contends that Medford's testimony conclusively establishes the fact that he deposited the motor vehicle registration fees in question in the depository. On direct examination Medford testified, in substance, that all tax money, including motor vehicle registration fees, collected by him as tax collector was deposited in the depository. On cross examination he testified as positively that he paid over all such tax money so collected and deposited by him, to the treasurers of the state, county, and several subdivisions, by checks drawn by him upon the depository and payable to such treasurers, except his commissions and office expenses; and that he did not at any time during his terms of office draw any funds out of the depository other than upon checks payable to such treasurers and for his commissions, fees, and office expenses. Medford was not a disinterested witness. If plaintiff's contentions were true, he would

**482**

be guilty of a felony. We do not say the record reflects that he is guilty, but if he were, it would be reasonable to assume that he would not in answer to interrogatories be willing to confess that he was guilty of failing to correctly deposit or of failing to correctly disburse all the money collected by him. In such circumstances we do not think the trial court was as a matter of law bound to accept the testimony of Medford.

 We think the judgment of the trial court may also be sustained upon the defendant's pleas of limitation. Medford's last term of office expired December 31, 1930. On February 13, 1931, he filed his final report making a final settlement with the county of all taxes claimed by him to have been collected and due the county. The depository had no way of determining whether or not Medford in his settlement correctly reported all the taxes collected by him and due the county, except by an examination of the tax collector's books showing stubs or copies of his receipts, in comparison with his reports. That duty is not imposed upon the depository. Such was the duty of the county auditor. Presumably he performed that duty and approved the report. There is no evidence to the contrary. The approval of that report, in so far as concerns the depository at least, raised an implication that the county was not claiming any of the money in the depository except that which was shown to be due it by the report, and raised an implied authorization for the depository to settle and close its account with Medford according to that report. The county knew that the depository would settle and close its account with Medford upon approval of that report. The evidence shows that the depository did settle and close its account with Medford on February 13, 1931, and that all the funds were withdrawn from the depository on that date and the account closed. It is not claimed that in closing his account with the depository Medford failed to remit to the county all the money due it as shown by said report. Therefore we think the relation of banker and depositor, if any, as between the county and depository ceased to exist at the time Medford made his final settlement with the county and the depository, and that limitation began to run in favor of the depository against the county from and after that date. This suit was filed nearly five years after that date, and nearly three years after the county filed its suit against Medford and his bondsmen in cause No. 17110. It appears that the statute of two years limitation, R.S. Article 5526, is here applicable. Fidelity & Deposit Co. v. Farmers & Merchants Nat. Bank, Tex.Civ.App., 121 S.W.2d 503.

The judgment is affirmed.