

# THE ATTORNEY GENERAL
## OF TEXAS

June 21, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Stan Schlueter
Chairman
Ways and Means Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No.   JM-919

Re: Whether  the  directors
of a taxing  unit are  per-
mitted  to  waive  interest
and penalties on a tax pay-
ment delinquent  by  reason
of a central appraisal dis-
trict error   (RQ-1173)

Dear Representative Schlueter:

You have asked us to determine

> [w]hether a central appraisal district is  an
> agent of  a taxing  unit which  utilizes  the
> central appraisal district  so that an  error
> or omission of the central appraisal district
> would allow the board  of the taxing unit  to
> waive interest and penalties on a  delinquent
> tax payment under section  33.011 of the  Tax
> Code.

The Tax Code provision to which you refer reads:

> The governing body of a taxing unit may  pro-
> vide for the waiver of penalties and interest
> on a delinquent tax if an act or omission  of
> an officer, employee, or agent <u>of the  taxing
> unit</u> caused the taxpayer's failure to pay the
> tax before delinquency and if the tax is paid
> within 21 days after the taxpayer knows of or
> should know  of the  delinquency.   (Emphasis
> added.)

A county is a "taxing  unit" within the meaning of  the
statute, but a central  appraisal district is not.   Section
1.04(12) of the Tax Code provides:

> (12)   'Taxing unit'  means  a  county,   an
> incorporated city or town (including a  home-

rule city), a school district, a special district or authority (including a junior college district, a hospital district, a district created by or pursuant to the Water Code, a mosquito control district, a fire prevention district, or a noxious weed control district), or any other political unit of this state, whether created by or pursuant to the constitution or a local, special, or general law, <u>that is authorized to impose and is imposing ad valorem taxes</u> on property even if the governing body of another political unit determines the tax rate for the unit or otherwise governs its affairs. (Emphasis added.)

An appraisal district does not fit this definition because it is not authorized to "impose" taxes on property; it is responsible only for appraising property in the district. <u>See</u> <u>Barclay v. Ochiltree Appraisal District Board</u>, 730 S.W.2d 878 (Tex. App. - Amarillo 1987, no writ). <u>Cf.</u> Tax Code §§171.2021(c)(2), 311.002(4).

Another statutory provision also makes it clear that an appraisal district is not a "taxing unit." Section 1.15 of the Tax Code, enacted in 1983 to become effective October 1, 1985,[1] prohibits a taxing unit from employing "any person for the purpose of appraising property for taxation purposes except to the extent necessary to perform a contract under Section 6.05(b) of [the] code" (section 6.05(b) allows appraisal districts to contract with a taxing unit to perform the duties of an appraisal office for the district). On the other hand, an appraisal district is statutorily responsible for appraising property for the ad valorem tax purposes of each taxing unit in the district -- which necessitates employing appraisers. Tax Code §6.01(b). <u>See</u> Tax Code §6.05(d). <u>Cf.</u> Tex. Const. art. VIII, §18; <u>Wilson v. Galveston County Central Appraisal District</u>, 713 S.W.2d 98 (Tex. 1986).

---

1. Section 1.15 of the Tax Code was codified as section 1.13 until 1987. <u>See</u> Acts 1983, 68th Leg., ch. 1028, at 5463; Acts 1987, 70th Leg., ch. 167, §5.01(a)50, at 1360.

It has been suggested that because an appraisal district is not itself a taxing unit, and because it is a "political subdivision of the state," Tax Code §6.01(c), an error caused by an officer, employee or agent of the appraisal district would not be an error caused by an officer, employee, or agent of the taxing unit so as to allow the taxing unit to waive penalties and interest on delinquent taxes under section 33.011 of the code. In our opinion, however, a central appraisal district, within the meaning of section 33.011, acts as the agent of the taxing units for which it makes appraisals.

The argument that the appraisal district cannot be the agent of the taxing unit rests on the familiar rule that "agency" is a legal relationship founded upon an express or implied contract whereby the agent acts for and on behalf of the principal and under his control. See 3 Tex. Jur. 3d, Agency §1, at 13. The relationship between an appraisal unit and a taxing unit for which it makes appraisals is said to be neither consensual nor one in which the appraisal district is subject to the control of the taxing unit, since the duties of the appraisal district are established independently by statute.

There are, of course, situations where the ordinary definition and consequences of agency do not apply. Not all agencies are created by contract; some arise by operation of law. The administrator of a decedent's estate, for example, has been termed a "statutory agent." See Roberts v. Kenna, 241 S.W.2d 680, 685 (Tex. Civ. App. - Beaumont 1951, no writ). Agencies can be created by estoppel. See 3 Tex. Jur. 3d, Agency §47, at 77. And an agent whose power of attorney is coupled with an interest is not completely subject to the control of the principal. Id. §28, at 51.

An agent for a public body is no less an agent because the duties of the agent are established by statutory law rather than by contract at common law. A public depository holds tax collections for the county as the trustee and agent of the county. See Fidelity and Deposit Co. v. Farmers and Merchants National Bank, 121 S.W.2d 503 (Tex. Civ. App. - Fort Worth 1938, writ dism'd). In Callaghan v. McGown, 90 S.W. 319, 327 (Tex. Civ. App. 1905, writ ref'd), the court, speaking of public officials, said:

> An officer is simply an agent of the public, whose power of attorney is the law, which prescribes his duties and limits his authority to such acts only as are necessary and

incidental to a proper discharge of such duties as it imposes.

An independent contractor engaged by a Public Utility District to read meters and to determine and collect water bills was held by this office to be the agent of the district in discharging those tasks. See Open Records Decision No. 437 (1986). We have also concluded that an independent governmental agency may be considered to be acting as the agent of another governmental entity even though no statute expressly denominates one as the agent of the other: viz., in Attorney General Opinion JM-446 (1986), the State Purchasing and General Services Commission was said to be the agent of the Supreme Court in collecting and abstracting information concerning the court.

Alternative concepts of "agency" need not be exhaustively explored. Here, we need only demonstrate that a legislature could reasonably have intended to use the word "agent" in a broader legal sense. The purpose of the legislative provision is clear and its use of "agent" in the suggested restrictive sense would lead to incongruous results.

Section 1.15 of the Tax Code (previously section 1.13) prohibiting taxing units from employing appraisers, was passed in 1983 but did not take effect until October 1, 1985. See Acts 1983, 68th Leg., ch. 1028, at 5463. Section 33.011 of the Tax Code (which permits the governing body of a taxing unit to provide for the waiver of penalties and interest on delinquent taxes "if an act or omission of an officer, employee, or agent of the taxing unit" caused the delinquency) became effective more than three months earlier -- on June 14, 1985, the day the Governor signed the bill enacting it. The bill was passed by a unanimous senate and a unanimous house, except for one house member present but not voting.

Thus, when the waiver provision was enacted, the legislature was aware that it would become effective at a time when not every taxing unit was yet prohibited from employing appraisers and when penalties resulting from delinquencies caused by the errors of such employees would be waivable under section 33.011. The legislature clearly intended that errors caused by some appraisal personnel resulting in delinquency penalties would allow waiver under the statute.

Though not all taxing units were prohibited from employing appraisers during the period from June 14, 1985 to October 1, 1985, some were. The same 1983 bill which prohibited every taxing unit from employing appraisers after October 1, 1985 (except in a contract situation), prohibited some (those located in appraisal districts that had not postponed their appraisal duties pursuant to a 1981 law) from employing appraisers after October 1, 1984. See Acts 1983, 68th Leg., ch. 1028, at 5463. The legislature, then, was not only aware that penalties resulting from delinquencies caused by the errors of some appraisers -- those employed by taxing units at the time section 33.011 became law -- would be waivable; it was also aware that some taxing units were then prohibited from employing appraisers themselves and were forced to rely upon appraisal districts for such appraisal services. See Driscoll v. Harris County Commissioners Court, 688 S.W.2d 569 (Tex. App. - Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The penalties and interest exacted of delinquent taxpayers in Texas are considered "penalties," not taxes. Jones v. Williams, 45 S.W.2d 130 (Tex. 1931). As such, their remission may be authorized by general law, though not by a special or local law, notwithstanding sections 51 and 55 of article III of the Texas Constitution, or section 10 of article VIII. Jones v. Williams, supra. Cf. Tex. Const. art. III, §56.

If, in its application to appraisers, section 33.011 applied only to those taxing units which on June 14, 1985, could still employ appraisers (a closed class), an argument might be made that it constituted unconstitutional local or special legislation, but we do not so regard it. In our opinion, section 33.011 was intended to be a uniform, general law extending to all taxpayers the possibility of relief from the consequences of a tax delinquency caused by taxing authorities.

The consequences of tax delinquency are severe. Delinquency triggers the application of section 15 of article VIII of the Texas Constitution, which reads:

> The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for

> the payment of the taxes and penalties due
> by such delinquent, under such regulations
> as the Legislature may provide.   (Emphasis
> added.)

See Tax Code title 1, ch. 33.

It is unreasonable to suppose that both the house and the senate would unanimously vote to permit relief of the constituents of some legislators, but not others, from burdens caused by tax appraisers exercising authority that, insofar as the taxpayer is concerned, is identical in nature, operation, and effect. The result would be even more incongruous in a "contract" situation if the word "agent," as used in section 33.011, were given a narrow meaning. A central appraisal district is permitted by section 6.05(b) of the Tax Code to contract with a taxing unit within the district to perform the functions of an appraisal office. Under the narrow interpretation suggested, mistakes made by appraisers used by the contracting taxing unit -- if delinquencies resulted -- would produce penalties waivable by the contracting taxing unit [caused by its agent], but not waivable by other taxing units in the district [not caused by their agent], even though the delinquencies occurring in all taxing units were caused by the identical mistake of the identical appraiser. We are confident that the legislature intended otherwise.

When taxes become delinquent as a result of errors committed by authorities charged with tax administration and not by reason of the taxpayer's fault, it is unjust, harsh and oppressive to visit upon the taxpayer a penalty which the taxpayer could not have avoided by any action of his own. While it may be within the power of the legislature to enact a statute having such an effect, it should not be held that the legislature intended to do so unless the language of the statute compels such construction. See Austin v. Strong, 1 S.W.2d 872 (Tex. 1928). In our opinion, the language of section 33.011 of the Tax Code does not compel such a construction.

The intention of the legislature in enacting legislation is the essence of the law, and it is the duty of courts to give effect to the legislative purpose. See 53 Tex. Jur. 2d, Statutes §125 et seq., at 180. The purpose of section 33.011 is to allow the relief of taxpayers from harsh and unjustified penalties resulting from delinquencies caused by errors of taxing authorities which the taxpayers were powerless to prevent. In order to effectuate that purpose,

it is necessary to broadly read the term "agent," as used in section 33.011 of the Tax Code, to include an appraisal district making tax appraisals for use by the taxing units. We do so.

### S U M M A R Y

To effectuate the legislative intent, the term "agent," as used in section 33.011 of the Tax Code, is to be read as including a central appraisal district making appraisals for use by the taxing unit. Therefore, the directors of a taxing unit are permitted to waive interest and penalties on a tax payment which is delinquent by reason of an error of a central appraisal district.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General